359 So.2d 450 (1978)
Ricky L. LINVILLE, Appellant,
v.
STATE of Florida, Appellee.
No. 51583.
Supreme Court of Florida.
May 18, 1978.
*451 Robert E. Jagger, Public Defender and Ellen I. Hoffenberg, Asst. Public Defender, Clearwater, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
SUNDBERG, Justice.
Pursuant to the constitutional authority conferred on this Court by Article V, Section 3(b)(1), Florida Constitution, we entertain this appeal which challenges an order of the trial court initially and directly passing on the validity of Section 877.11, Florida Statutes (1975).[1] The order finds the statute to be facially constitutional.
Appellant was charged by information with the intentional inhalation of toluene, a substance found in cement, for the purpose of inducing symptoms of intoxication in violation of Section 877.11(2), Florida Statutes (1975). He pleaded not guilty and moved to dismiss the charge on the ground that the statute in question was vague, overbroad, and constituted an invasion of privacy. After the trial court denied that motion, appellant changed his plea to nolo contendere, specifically reserving his right to appeal denial of the motion to dismiss. The trial court thereafter adjudicated appellant guilty and placed him on one-year probation.
Appellant urges this Court to find Section 877.11, Florida Statutes (1975), unconstitutional on its face for vagueness and overbreadth. He argues that as defined in the statute "chemical substance" is so broad as to encompass every substance, object, and product. The supposed limiting construction placed on that term by the listing of physical states produced, i.e., intoxication, elation, etc., fails to correct this overbreadth because these common states are attributable to almost every person during the course of his lifetime. Thus, appellant concludes that the effect of this sweeping definition is both to proscribe protected conduct and to fail to provide warning to the man of common intelligence of the conduct which is being prohibited. Because we find that the statutory language does not convey *452 sufficiently definite warnings of the proscribed conduct when measured by common understanding and practice,[2] we accept appellant's contentions and reverse the order of the trial judge denying appellant's motion to dismiss.
"Chemical substance" is defined in the statute as:

[A]ny natural, artificial, or pharmaceutical substance, including model glue, whether gaseous, liquid, or solid, the fumes of which, when inhaled by a human being, cause a condition of, or induce or produce symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction or dulling of the senses of the nervous system, or a distortion or disturbance of the auditory, visual, or mental processes. (Emphasis added)
Pursuant to this definition, the inhalation of tobacco fumes is arguably subject to criminal prosecution. Tobacco is a "natural substance," which cases a "dulling of the senses of the nervous system" and occasionally produces "dizziness" when it is inhaled. Diehl, Harold S., M.D., Tobacco & Your Health: The Smoking Controversy (1969); Ochsner, Alton, M.D., Smoking: Your Choice Between Life and Death (1970).[3] By the same token, it is conceivable that the statute attempts to prohibit the inhalation of perfume as well as self-prescribed nose and lung inhalation products. Without passing upon whether the legislature may permissibly proscribe such conduct, we note that one cannot know whether it has or not. Regardless of whether the legislature in fact intended to proscribe the inhalation of the fumes from these products, the statute suffers from constitutional infirmities because due process will not tolerate a law which forbids or requires the doing of an act in terms so vague that the person of common intelligence must necessarily guess at its meaning. Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); State v. Llopis, 257 So.2d 17 (Fla. 1971); Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934).
The predecessor to Section 877.11, Chapter 67-416, Laws of Florida, was restricted in scope to the inhalation of model glue. In 1970, the statute was amended by the legislature, extending its reach to include the inhalation of "harmful chemical substances." Chapter 70-165, Laws of Florida. We hypothesize that the legislature was attempting to expand the statute's application because numerous individuals to whom the enactment was intended to apply were escaping prosecution when inhaling fumes of substances other than model glue. However, we cannot hypothesize just how far the legislature wished to expand the statute and, even if we could, the language of the act fails to provide sufficient notice to the man of common intelligence of what acts it seeks to proscribe.
Florida was not alone in enacting legislation of this kind. Both Hawaii and California have similar laws which have been sustained by the courts against constitutional challenges similar to the ones herein. However, a careful reading of those statutes reflects no inconsistency between our decision today and the decisions of the Hawaii and California courts. In State v. Kahalewai, 56 Haw. 481, 541 P.2d 1020 (1975), the Supreme Court of Hawaii upheld Section 1250(1)(a) of the Hawaii Penal Code which provided:
(1) A person commits the offense of promoting intoxicating compounds if he knowingly and unlawfully:

*453 (a) Breathes, inhales, or drinks any compound, liquid, or chemical, containing toluol, hexane, trichloroethylene, acetone, toluene, ethyl acetate, methyl ethyl ketone, trichloroethane, isopropanol, methyl isobutyl ketone, methyl cellosolve acetate, cyclohexanone, or any other substance for the purpose of inducing a condition of intoxication, stupefaction, depression, giddiness, paralysis or irrational behavior, or in any manner changing, distorting or disturbing the auditory, visual or mental processes.
The defendant in Kahalewai argued that the statute was overbroad because it could be read to provide that a person commits the offense if he knowingly consumes "any other substance for the purpose of inducing intoxication" or any of the other specified conditions. The defendant concluded that when so read, that section of the code might prohibit consumption of substances such as alcoholic beverages, tobacco, and coffee. The court rejected this proposition finding that under the rule of ejusdem generis, the general term "any other substance" meant any other substance similar to the enumerated specific compounds which immediately preceded the general term. This construction was mandated because the general term "any other substance" followed the list of specific terms and, like the specified terms, was the object of the participle "containing." Because all of these specified terms described various volatile organic liquid solvents commonly used in gasoline, glues, cleaning fluid, and various types of paint, the general term was construed to be limited to compounds of that kind.
Our statute is not susceptible to such a saving construction. It does not contain a general term which follows a list of specifically enumerated chemical substances, ordinarily used for industrial purposes and never intended to be consumed or inhaled. Rather, the express language of the statute militates against any such limited construction because "chemical substance" is defined to include any "natural" or "pharmaceutical" substance in addition to any artificial substance.
In People v. Orozco, 266 Cal. App.2d 507, 72 Cal. Rptr. 452 (1968), the defendants were convicted under Section 4207.1 of the Monterey Park Municipal Code which stated:
No person shall inhale, breathe or drink any compound, liquid, chemical or any substance known as glue, adhesive, cement, mucilage, dope or any material or substance, or combination thereof with the intent of becoming intoxicated, elated, dazed, paralyzed, irrational or in any manner changing, distorting or disturbing the eyesight, thinking process, balance or coordination of such person. For the purpose of this part, any such condition so induced is deemed to be an intoxicated condition. The provisions of this section shall not pertain to any person who inhales, breathes or drinks such material or substance pursuant to the direction or discretion of any doctor, physician, surgeon, dentist or pediatrist authorized to so direct or prescribe.
In sustaining this ordinance against constitutional challenge, the court held that:
[G]uided by the rule of construction that particular expressions in a statute qualify those which are general (Civ.Code, § 3534), we read section 4207.1 as if its language included the words inserted in brackets as follows: "* * * any compound, liquid, chemical or any [other] substance known as glue, adhesive, cement, mucilage, dope or any [similar] material or substance, or combination thereof * * *" As so read, this section is "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties [citation omitted] and therefore, meets the constitutional requirement of certainty. 72 Cal. Rptr. at 453-454.
Again, the statute could be given such a restrictive construction because the general term was elucidated by the specifically enumerated chemical substances.
In sum, Section 877.11, Florida Statutes (1975), cannot withstand constitutional scrutiny because a man of common intelligence *454 cannot be expected to discern what activity the statute is seeking to proscribe. This deficiency could be remedied if the legislature refined the definition of "chemical substance" to reflect more precisely its intent.
Accordingly, Section 877.11, Florida Statutes (1975), is hereby declared unconstitutional, and the order of the trial court denying appellant's motion to dismiss is reversed.
It is so ordered.
OVERTON, C.J., and ENGLAND and HATCHETT, JJ., concur.
BOYD, J., dissents.
NOTES
[1] § 877.11, Fla. Stat. (1975), reads:

"Inhalation or possession of harmful chemical substances; penalties. 
(1) Definition.  As used in this section, the term `chemical substance' shall mean any natural, artificial, or pharmaceutical substance, including model glue, whether gaseous, liquid, or solid, the fumes of which, when inhaled by a human being, cause a condition of, or induce or produce symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction or dulling of the senses of the nervous system, or a distortion or disturbance of the auditory, visual, or mental processes.
(2) Inhalation prohibited.  It shall be unlawful for any person intentionally to smell or inhale the fumes of any chemical substance, or to induce any other person to do so, for the purpose of causing a condition of, or inducing symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction, or dulling of the senses of the nervous system or for the purpose of in any manner changing, distorting, or disturbing the auditory, visual, or mental processes. This section shall not apply to the inhalation of any anesthesia for medical or dental purposes.
(3) Possession regulated.  It shall be unlawful for any person intentionally to possess any chemical substance for the purpose of using the same in the manner prohibited by subsection (2).
(4) Inducing other persons.  It shall be unlawful for any person intentionally to possess, buy, sell, or otherwise transfer any chemical substance for the purpose of inducing or aiding any other person to violate the provisions of subsection (2).
(5) Penalties.  Any person who violates any of the provisions of this section shall upon conviction be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."
[2] Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 1498 (1957); Hunter v. Allen, 422 F.2d 1158 (5th Cir.1970); D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); Newman v. Carson, 280 So.2d 426 (Fla. 1973); Zachary v. State, 269 So.2d 669 (Fla. 1972); Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972); Smith v. State, 237 So.2d 139 (Fla. 1970).
[3] These works illustrate the well-documented fact that smoking depresses the sense of taste and smell, in addition to producing symptoms of dizziness, faintness and rapid pulse as a result of mild nicotine poisoning.