594 F.2d 1051
 4 Fed. R. Evid. Serv. 515
 Marilyn HARLESS, Plaintiff-Appellant,
v.
BOYLE-MIDWAY DIVISION, AMERICAN HOME PRODUCTS, a
corporation, Defendant- Appellee.
Marilyn Harless POWELL, as Administratrix of the Estate of
Lawrence Michael Harless, Deceased, Plaintiff-Appellant,
v.
BOYLE-MIDWAY DIVISION, AMERICAN HOME PRODUCTS, a
corporation, Defendant- Appellee.
 No. 77-1168.
 United States Court of Appeals,
Fifth Circuit.
 May 11, 1979.
Rehearing Denied June 13, 1979.
 
 Jackson G. Beatty, Tallahassee, Fla., for plaintiff-appellant.
 Goble D. Dean, Orlando, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Florida.
 Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.
 GEWIN, Circuit Judge:
 
 
 1
 This appeal arose from a wrongful death action in which appellant alleged simple and culpable negligence on the part of appellee in failing to warn of the fatal consequences of the inhalation of its product Pam, although it had been aware of the consequences for a number of years. All parties concede that the death of 14 year old Michael Harless occurred as a result of his intentional inhalation of Pam, a household product manufactured and distributed by appellee.
 
 
 2
 Originally plaintiff-appellant Marilyn Harless, mother of the deceased, brought two wrongful death actions, suing both individually and as administratrix of decedent's estate. The cases were consolidated and removed to the district court on the basis of diversity jurisdiction.
 
 
 3
 The jury returned a general verdict for the defendant-appellee. Appellant cites numerous grounds in support of her appeal. We find merit in several of her contentions and accordingly reverse.
 
 
 4
 On June 26, 1972 the deceased and his friend were watching cartoons on TV and they decided to inhale Pam, an activity to which they had been introduced only two days earlier by some friends from out of town. Pam was inhaled by taking the core of a roll of toilet paper and stuffing tissue paper into the middle of the core. Then with one end of the core stuck in the mouth Pam was sprayed into the other end and the child would take a deep breath inhaling the substance into the lungs, producing a tingling sensation.
 
 
 5
 Michael Harless's death was caused by his inhalation of the freon propellant in Pam.[1] Pam is a household product manufactured and distributed by appellee with the intended purpose of preventing food from sticking to cooking surfaces.
 
 
 6
 The only relevant warning on the label on the can of Pam used by deceased was as follows:
 
 
 7
 Avoid direct inhalation of concentrated vapors. Keep out of reach of children.
 
 
 8
 There was uncontroverted evidence presented at trial that appellee had notice of 45 deaths allegedly occurring from the misuse of Pam during the four years preceding Michael's death. Vol. VI at 28-39.
 
 
 9
 In March 1972 appellee sent to the printer a new label with a new warning:
 
 
 10
 CAUTION: use only as directed, intentional misuse by deliberately concentrating and inhaling the contents can be fatal . . .
 
 
 11
 Appellee made no other attempt to warn the public of the danger. The cans with the old labels were not recalled, and the can used by the deceased bore a label with the old warning.
 
 
 12
 The first issue considered by this court is whether the trial court erred in excluding appellant's proffered rebuttal evidence showing that no deaths had occurred for two years under appellee's new label warning that inhalation could be fatal. Appellant sought to introduce a portion of a deposition of Mr. Rubin, appellee's production and research coordinator and the inventor of Pam. Mr. Rubin, who testified that he was the most knowledgable person in the appellee company on the history of Pam and the "sniffing syndrome", stated that he had no knowledge of any deaths arising under the new label. This evidence was offered to rebut the testimony of two expert witnesses introduced by appellee. The testimony of the experts was, in essence, that it did not matter what type of warnings were placed on the label by the manufacturer, teenagers were not going to read them or obey them if they did read them. Also they testified that labels warning of possible death may cause greater misuse of the product.
 
 
 13
 The court below excluded the proffered rebuttal evidence because it felt that it might be "misleading." Vol. VIII, p. 44. Appellee argues that it is misleading in that Mr. Rubin further stated in his deposition that he might not necessarily be the only one in the company with knowledge about any deaths that might have arisen from misuse of the product under the new label. He stated that the legal department might be more informed than he about any such alleged deaths.
 
 
 14
 To prevent the proffered evidence from being misleading, it would have been simple for appellee to introduce the remaining portion of Mr. Rubin's statement, to put it into proper context. Furthermore, if the legal department was aware of any alleged deaths under the new warning, such evidence could have been admitted as surrebuttal.
 
 
 15
 The testimony of the experts related directly to the issue of the adequacy of the label and the legal or proximate cause of death. The proffered evidence arguably negated the evidence presented in appellee's case-in-chief that teenagers do not read or obey labels and that a label warning of possible fatal consequences might encourage the product's misuse. We believe that the proffered evidence should have been admitted as proper rebuttal testimony under Florida law going directly to new matters brought out by evidence of defendant-appellee. Driscoll v. Morris, 114 So.2d 314 (Fla.3rd Dist.Ct.App.1959). Accordingly, we find that the court erred in excluding this proffered testimony.
 
 
 16
 One of the most perplexing issues raised by appellant is whether the court erred in its instructions to the jury to consider one of the defenses raised by appellee; whether Michael Harless was "negligent by failing to read an adequate label."
 
 
 17
 It is well settled that in determining the adequacy of the judge's instructions, one must view the instructions as a whole. United States v. Green, 433 F.2d 946 (5th Cir. 1970). In the instant case this is particularly important since the applicable law is governed by the principles of comparative negligence. The underlying legal theories provide taxing mental exercises for even those well versed in the law. For the average juror not so familiar with Prosser and other renowned experts in the area of the law of negligence, the issues presented must resemble a never-ending maze.
 
 
 18
 Judge Stafford made a valiant effort to lead the jurors through this maze step by step. A review of the route taken unfortunately reveals that he was unsuccessful in his commendable attempt.
 
 
 19
 The first issue presented for the determination of the jury was whether appellee "was negligent in failing to adequately warn of the dangers of its product's use or misuse which were known or foreseeable to the defendant" and "whether Pam was an inherently dangerous commodity." Vol. X at 4. In determining whether the warning on the label was adequate the jury was correctly instructed to consider two characteristics, among others. First, the label must be of such form that it could "reasonably be expected to catch the attention of the reasonably prudent man in the circumstances of its use." Second, "the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." Vol. X at 5-6.
 
 
 20
 The judge then instructed the jury that if the great weight of the evidence did not support appellant's claim on the issue of appellee's negligence, the verdict should be for appellee. If the great weight of the evidence did support appellant on the issue, then the jury was to consider the second question; whether the negligence of appellee was the legal cause of the death of Michael Harless. The jury was next correctly instructed on the considerations involved in determining the issue of the legal cause of death. Vol. X at 6 & 7.
 
 
 21
 The jury was subsequently asked to determine whether the greater weight of the evidence did or did not support the claim of appellant on the issue of the legal cause of death. If the great weight of the evidence did not support appellant's claim, the jury was instructed to return a verdict for appellee; if the evidence did support appellant's claim, the jury was to consider the defenses raised by appellee.[2]
 
 
 22
 The first defense raised by appellee was whether the decedent was "negligent by failing to read an Adequate label, misuse or abuse of the product, or otherwise, and, if so whether such negligence was a contributing legal cause of the injury complained of . . ." Vol. X at 7-8.
 
 
 23
 We find the judge's instruction concerning the first defense to be inconsistent with its preceding instruction to the jury.[3] Under the instructions given, before the jury could consider the defenses raised, they must have concluded that appellee's label was Inadequate. It seems both confusing and internally inconsistent to ask a jury who has previously concluded that the label was Inadequate to consider the defense of failure to read an Adequate label. Indeed, if the label is considered adequate, appellant concedes that she has no claim against appellee.[4] Thus, we deem the instruction to be in error.
 
 
 24
 Several problems are advanced with respect to the next issue raised;[5] did the court err in ruling that the violation of a misdemeanor statute[6] by the deceased was negligence as a matter of law?
 
 
 25
 All parties concede that the leading case in Florida on the effects of a violation of a criminal statute as setting a standard of conduct in a civil suit is DeJesus v. Seaboard Coastline Railroad Company, 281 So.2d 198 (Fla.1973). The Supreme Court of Florida defined three types of statutes and succinctly stated the effects of a violation of each.
 
 
 26
 The "strict liability" statutes to which we have been referring are the type designed to protect a particular class of persons from their inability to protect themselves, such as one prohibiting the sale of firearms to minors. Tamiami Gun Shop v. Klein, (116 So.2d 421) supra. A violation of this type of statute is, of course, negligence per se.
 
 
 27
 Also negligence per se is a violation of any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury. See 65 C.J.S. Negligence § 19(3). As held by this District Court in its Richardson (Richardson v. Fountain, 154 So.2d 709) opinion, contributory negligence Is a defense to negligence based on a violation of this type of statute. Also, as the Court pointed out in the decision now under review, the fact of negligence per se resulting from a violation of this type of statute does not necessarily mean there is Actionable negligence. It must also be established by a plaintiff that he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury. (emphasis in original)
 
 
 28
 Violation of any other type of statute may be considered only as prima facie evidence of negligence. In this category also fall violations of traffic regulations, which this Court has consistently distinguished from other penal statutes and ordinances. E. g., Allen v. Hooper, 126 Fla. 458, 171 So. 513 (1937). Of course, the distinction must be made again between actual negligence and other elements of actionable negligence. Proof of violation of a traffic ordinance is prima facie evidence only of "negligence"; proximate cause and other elements of actionable negligence must be proven independently.
 
 
 29
 281 So.2d at 201.
 
 
 30
 Appellant contends that appellee was not within the protected class and therefore should not benefit from the application of the standard espoused in DeJesus. We agree with the court below that Florida Statute 877.11 established a duty to take precautions to protect a particular class of persons from a particular type of injury. It is clear that appellant falls within that class and that a violation of the statute by the decedent may constitute contributory negligence per se[7] if there is a showing that the unlawful act had some causal connection with the injury.[8]
 
 
 31
 Appellant also challenges the court's instructions that a violation of the statute is negligence per se because the court did not at that point instruct the jury to consider the age of the deceased when weighing the reasonableness of his actions. Vol. X at 9.
 
 
 32
 Of course, it is hornbook law that the correct standard to be applied when the instructions of the court are challenged is whether the instructions as a whole correctly state the law. United States v. Green, 433 F.2d 946 (5th Cir. 1970); Gurleski v. United States, 405 F.2d 253 (5th Cir. 1968), Cert. denied, 395 U.S. 981, 89 S.Ct. 2127, 23 L.Ed.2d 767 (1969).
 
 
 33
 After carefully scrutinizing the entire instructions, it is obvious that the court did correctly instruct the jury to consider the age of the decedent when deliberating on the misuse or abuse of the product by Michael. Vol. X at 9-10. Moreover, the court took judicial notice that the legislature had specifically drafted the pertinent statute as a deterrent to such action by individuals in the same age group as the deceased. Vol. III at 839-40. Accordingly, we do not find error in the court's instructions on this point.
 
 
 34
 Appellant's third challenge to the employment of this statute as a defense centers around a decision by the Florida Supreme Court that declared the applicable statute unconstitutional subsequent to the trial below. Linville v. State of Florida, 359 So.2d 450 (Fla.1978). The court in Linville failed to address the issue of retroactive application of their decision. While this may be some evidence of a reluctance to so apply its decision, the court's silence on this issue is certainly not conclusive evidence of a decision not to apply its decision retroactively. However, without any direct evidence that the court intended to apply its decision retroactively, we decline to apply Linville to the instant case.
 
 
 35
 Two separate problems are raised with respect to appellant's contention that the court erred in failing to grant her Motion In Limine concerning the smoking of marijuana by the deceased or his brother and the failure of the deceased or his brother to read the label. Vol. III at 897-8. First, appellant argues that the court should have precluded appellee from questioning the deceased's brother about his or Michael's smoking of marijuana. The court denied appellant's motion on this point.
 
 
 36
 During the course of the trial appellee's counsel asked the deceased's brother on four occasions whether he had smoked marijuana. Although the court ruled the question to be irrelevant, it is reasonable to assume that the jury might have considered the clear inference that the brother had smoked marijuana as it deliberated on the merits of the case. The court did permit appellee to ascertain from the deceased's brother that Michael had smoked marijuana on at least one occasion. Appellee contends that the evidence that Michael had smoked marijuana on one occasion was properly admitted as character evidence necessary to assist the jury in placing a value on the loss Mrs. Harless sustained as a result of her son's death. We question the relevance of this evidence and find it to be tenuous at most. In contrast to any slight value it might have upon the jury's determination of damages, we view the evidence as being highly prejudicial. Accordingly, we conclude that the evidence that Michael had smoked marijuana on one occasion was precisely the type of highly prejudicial evidence that should be excluded under Federal Rule of Evidence 403. The court should have granted the motion in limine on the issue of marijuana smoking.
 
 
 37
 The second problem at issue is whether the court was correct in denying the motion to exclude testimony that the deceased and his brother had failed to read the label on Pam. The rectitude of the court's denial turns, at least in part, on the propriety of the defense of failure to read an alleged inadequate label under Florida law. This inquiry presents the same determination of Florida law that arose in the second issue raised by appellant. See footnote 4 Supra.
 
 
 38
 The evidence adduced at trial on this point was that the boys who had participated with the deceased in inhaling Pam had not read the label nor had the deceased in their presence. We are persuaded that this testimony would be relevant to the issue of legal or proximate cause, particularly if Florida permits a defense of failure to read an inadequate label.
 
 
 39
 The comparative negligence doctrine is a new and developing area of law in Florida.[9] Upon consideration of both the complexity and the avowed importance of this issue, we believe the policy of comity would be best served by permitting the Florida courts to determine the propriety of this defense.[10] Consequently, we decline to reach the merits on the issue of the appropriateness of permitting the jury to consider the evidence of the boy's failure to read the label on Pam.
 
 
 40
 The fifth issue raised by appellant concerns the exclusion of six letters which she attempted to introduce to establish the notice, state of mind and superior knowledge of the appellee-manufacturer concerning the potential fatal consequences of the misuse of its product. The letters that she sought to introduce were received by appellee prior to her son's death and informed appellee of three alleged deaths resulting from alleged inhalation of Pam and suggesting that the manufacturer should take additional steps to prevent more deaths from occurring under similar circumstances.
 
 
 41
 Appellee objected to the admission of the letters, arguing that it had already stipulated to notice of 45 other instances of similar alleged deaths and the additional letters would merely be cumulative.
 
 
 42
 After reviewing the contents of the letters, the judge permitted appellant to inform the jury of appellee's notice of three more deaths alleged to have resulted from inhalation. Judge Stafford felt that any additional use of the letters would be prejudicial, confusing, or misleading to the jury. Vol. VII at 115-19.
 
 
 43
 Judges frequently face the difficult task of weighing the merits of admitting evidence that has varying degrees of relevance and prejudice. The complexity of this dilemma has been recognized and judges have been afforded great discretion in their determination to exclude certain relevant evidence under Federal Rules of Evidence 403.
 
 
 44
 We feel that Judge Stafford obtained a judicious balance in permitting the jury to be informed of appellee's notice of three other alleged deaths while excluding evidence that might have been highly prejudicial or misleading in this complex case.
 
 
 45
 The final question raised is whether the court erred in failing to grant appellant's motion for a directed verdict on the issue of appellee's negligence. Mrs. Harless contends that under Tampa Drug Company v. Wait, 103 So.2d 603 (Fla.1958), appellee was negligent as a matter of law for failing to give "fair and adequate notice of the possible consequences of use or even misuse." Id. at 607.
 
 
 46
 It is without question that under the holding of Tampa Drug a distributor of an inherently dangerous commodity[11] placing its product in the channels of commerce has a duty to convey to those who might use the product "a fair and adequate notice of the possible consequences of use or misuse" of the product. While the duty to supply users with an adequate warning is not challenged, the adequacy of the warning given by appellee is in dispute.
 
 
 47
 It has long been the province of the jury to be the adjudicator of factual disputes. Consequently, if the evidence presented before the jury was sufficient to cause reasonable minds to differ on the sufficiency of the notice supplied by the warning on the label of Pam, the issue was properly submitted to the jury.
 
 
 48
 In determining that the adequacy of the label warning was properly submitted to the jury, the court in Tampa Drug stated:
 
 
 49
 The differences in the various labels in evidence of themselves demonstrate that reasonable minds might well differ on the sufficiency of the notice furnished by this label. We think that the sufficiency of the warning to place a reasonable man on notice of the potentially fatal consequences of the commodity here involved and under the conflicting evidence in this record justified submitting the problem to the jury for determination.
 
 
 50
 103 So.2d at 609.
 
 
 51
 In the case at bar several witnesses, including two expert witnesses, testified to the effect that in their view the warning on the label was adequate. Under the facts in the instant case, we believe that it was proper for the jury to determine if appellee had fulfilled its duty to warn " 'with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger.' " Edwards v. California Chemical Co., 245 So.2d 259 (Dist.Ct.App.Fla.1971), Quoting Tampa Drug Company v. Wait, 103 So.2d 603 (Fla.1958).
 
 
 52
 Having found merit in several of the issues raised by appellant, we reverse and remand for further proceedings consistent with this opinion.
 
 
 53
 REVERSED and REMANDED.
 
 
 
 [1]
 Deceased was instructed by his mother and school officials to only use products for their intended use. Also the brother of the deceased had warned Michael not to inhale Pam. Vol. VII at 26-28a
 
 
 [2]
 It might be argued that any error that occurred in the instructions with regard to the defenses would necessarily be only harmless error because the jury returned a general verdict for the defendant-appellee. The theory underlining this argument is that under the instructions given to the jury, for them to have returned a general verdict for appellee, they must have found either that appellee was not negligent or that if it was negligent, its negligence was not the proximate cause of death. Under the instructions given it would be only after a finding that appellee was negligent and that negligence was a proximate cause of death that the jury would consider the defenses raised by appellee
 Upon consideration of the defenses, if the jury did not view the great weight of the evidence as supporting the defenses of appellee they were instructed to find for the appellant. If, on the other hand, they were persuaded that both appellant and appellee were negligent and the negligence was a contributing legal cause, the jury was to find for the plaintiff-appellant and prorate the amount of damages sustained by her in the same proportion that the deceased's negligence contributed to the damages. Thus, under either alternative, if the jury considered the defenses, they would have to have found for the plaintiff-appellant and awarded at least nominal damages.
 While this theory is facially correct, it presupposes that the jury took a comparmental view of the issues and did not consider the defenses raised by appellee when determining the issue of the legal cause of death. More specifically under the reasoning of this theory, it must be assumed that the jury did not consider the issues of the failure to read the label or the violation of a statute in their determination that the negligence of appellee was not the legal cause of death. This assumption flies in the face of reality when it is recalled that in determining the issue of the legal cause of death the jury was asked to consider the following:
 However, the negligence of a person is not the legal cause of injury if it is interrupted by a separate, independent and efficient act done; that is, if it is interrupted by an act which is not reasonably foreseeable and which is sufficient in and of itself to cause the injury.
 Vol. X, p. 7.
 Consequently, we cannot agree with the view that any alleged errors in the instructions pertaining to the defenses asserted by appellee would be merely harmless error.
 
 
 [3]
 Appellee contends that appellant failed to properly object to the court's instructions. After carefully reviewing the voluminous record of the charge conference we are persuaded that appellant did adequately challenge the instructions given by the court. Vol. VIII at 78-129
 
 
 [4]
 We do not reach the issue of whether it is proper for the jury to consider the defense of failing to read an inadequate label since that is a matter of state law that is better left for determination by state courts
 
 
 [5]
 We have previously dealt with the argument by appellee that any errors related to the defenses it promulgated would be merely harmless error. Footnote 2 Supra
 Appellee also urges the retroactive application of Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla.1978). We decline to so apply it.
 
 
 [6]
 § 877.11 Fla. Statute
 (1) Definition. As used in this section, the term "chemical substance" shall mean any natural, artificial, or pharmaceutical substance, including model glue, whether gaseous, liquid, or solid, the fumes of which, when inhaled by a human being, cause a condition of, or induce or produce symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction or dulling of the senses of the nervous system, or a distortion or disturbance of the auditory, visual, or mental processes.
 (2) Inhalation prohibited. It shall be unlawful for any person intentionally to smell or inhale the fumes of any chemical substance, or to induce any other person to do so, for the purpose of causing a condition of, or inducing symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction, or dulling of the senses of the nervous system or for the purpose of in any manner changing, distorting, or disturbing the auditory, visual, or mental processes. This section shall not apply to the inhalation of any anesthesia for medical or dental purposes.
 
 
 [7]
 The violation of a statute by a plaintiff, that was not enacted for the benefit of the defendant is regarded in some jurisdictions as being only some evidence of negligence. 57 Am.Jur.2d Negligence § 315. Other jurisdictions have found such violations as being negligence per se. Prosser on Torts, Negligence Standard of Conduct § 34 (4th ed. 1971)
 We find no error in the court's decision to interpret the intent of the Florida legislature to be effectuated by applying a negligence per se standard under the circumstances of the instant case.
 
 
 [8]
 To establish that violation of a nonstrict liability statute is negligence per se rather than mere evidence of negligence, so that the jury would be entitled to an instruction that violation of this statute by plaintiff's decedent constitutes contributory negligence, it must be shown that the statute in question "establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." DeJesus, supra, at 201; 65 C.J.S. Negligence, § 19(3). The court takes judicial knowledge of the fact that the subject statute was enacted in 1967, at the height of the "glue sniffing" craze particularly prevalent among teenagers. It is difficult to attribute to the Florida Legislature any other motive in enacting this statute than that of protecting teenagers and other individuals from inflicting harm on themselves by inhalation of precisely the type of substance that was inhaled by plaintiff's decedent in the instant case. To give teeth to this policy, the Legislature made violation of this statute a second degree misdemeanor. The court finds, contrary to the view espoused by plaintiff, that Florida Statute § 877.11 does establish a duty to take precautions to protect a particular type of injury. The court also finds that plaintiff's decedent may constitute contributory negligence per se of the type that would entitle defendant to an instruction such as that quoted above, provided defendant meets its burden of showing that the unlawful act has some causal connection with the injury. See 57 Am.Jur.2d §§ 315, 382. See also Prosser on Torts, 2d ed. § 36, Violation by Plaintiff
 Order by Judge Stafford March 15, 1976. Vol. III at 839-40.
 
 
 [9]
 Hoffman v. Jones, 280 So.2d 431 (Fla.1973)
 
 
 [10]
 In arguing this point, the parties below have cited only one Florida case as being controlling. Drackett Products Co. v. Blue, 152 So.2d 463 (Fla.1963) involved a certified question to the Florida Supreme Court in a case where a seven year old boy sustained injuries when a can of drain solvent exploded after the boy placed water in the can and recapped it. The question before the court was whether the trial court had been correct in excluding the testimony of the mother as to whether on the day of the accident she would have kept the can on the shelf if she knew what she learned as a result of the accident; that the can would explode with water in it. The mother conceded at trial that she had not read the portion of the label containing the words "keep water out of can." The court viewed her testimony as being mere conjecture and held it to be inadmissible
 In so ruling, the court used the following language:
 What the witness might have done had she read the warnings on the label would appear to be of no evidentiary value in proving the appellee's negligence in failing to give a sufficient warning by label of the dangerous potential of the commodity.
 
 
 [152]
 So.2d at 465
 Appellant argues that this language requires us to find the evidence that the deceased failed to read the label on Pam as being totally irrelevant and immaterial. Appellant's brief at 25. Appellee emphasizes that Drackett was decided prior to Florida's adoption of the doctrine of comparative negligence and that the deceased's alleged failure to read the label is relevant to the issue of proximate cause.
 Considering the paucity of Florida cases on this point, as well as in the entire area of comparative negligence, we are reluctant to ascribe as broad a reading to Drackett as appellant urges. The interpretation of the language in this case must be considered in light of Florida's new doctrine of comparative negligence. We believe that the Florida courts are the appropriate authorities to balance the countervailing policy issues in reaching this determination.
 
 
 [11]
 We do not comment on whether the product in the instant case should be viewed as an inherently dangerous commodity. The court below determined that to be a question of fact to be reached by the jury and correctly instructed them in that regard. Vol. X, p. 4