635 F.Supp. 1262 (1986)
In re INVESTORS FUNDING CORPORATION OF NEW YORK SECURITIES LITIGATION.
James BLOOR, as Trustee Pursuant to Chapter X of Title 11 of the United States Code of the Estate of Investors Funding Corporation of New York, etc., Plaintiff,
v.
Jerome DANSKER, et al., Defendants.
No. 76 Civ. 4679 (WCC).
United States District Court, S.D. New York.
May 20, 1986.
*1263 Anderson Russell Kill & Olick, P.C., New York City, for plaintiff; Nicholas J. Zoogman, of counsel.
Gerald L. Shargel, New York City, for defendants Norman Dansker and Suro Corp.; Meister Leventhal & Slade, New York City, Ronald W. Meister, Alan Vinegrad, of counsel.
Obermaier, Morvillo, & Abramowitz, P.C., New York City, for defendants Jerome Dansker and Henelo Corp.; Otto G. Obermaier, Robert J. Anello, of counsel.
Spengler Carlson Gubar Brodsky & Frischling, New York City, for defendants Carro Spanbock Londin Rodman & Fass, Melvin J. Carro, Maurice Spanbock, and Jerome J. Londin; Edward Brodsky, Sarah S. Gold, Richard P. Swanson, Rhonda D. Orin, of counsel.

OPINION AND ORDER
WILLIAM C. CONNER, District Judge:
Plaintiff James Bloor ("the trustee"), chapter X trustee for the Investors Funding Corporation of New York ("IFC"), commenced this action against a multitude of defendants alleging fraud in connection with the insolvency of IFC. The principal actors in the tragic drama described in the trustee's voluminous complaint are Jerome, Norman, and Raphael Dansker ("the Danskers"), "the principal officers, controlling directors, controlling stockholders and the dominant force of IFC until sometime prior to October 21, 1974." Complaint ¶ 105.[1] IFC allegedly suffered massive damages at the hands of the Danskers, both as a result of certain mismanagement decisions and as a consequence of transactions by which the Danskers misappropriated IFC funds for the personal benefit of themselves and others. Id. ¶ 103 passim. The trustee alleges that as these actions, characterized as "the [f]raud," id. ¶ 100, progressed, "larger and larger amounts of money were required and were obtained in order (i) to cover up the past fraudulent activities, management malfeasance and business reverses, (ii) to give IFC the false and misleading appearance of legitimacy and success, and (iii) to continue the [f]raud." Id. ¶ 104. On the basis of this false image of financial health, the Danskers were allegedly able to obtain for IFC large quantities of funds from creditors, debenture holders, stockholders, and other sources. Id. ¶ 102. These sums were purportedly used to perpetuate and conceal the fraud.
Three motions are presently before the Court. Defendants Norman Dansker and Suro Corporation have moved pursuant to rule 403, Fed.R.Evid., to exclude certain evidence. Defendants Jerome Dansker and Henelo Corporation have moved pursuant to rules 20(b), 21, and 42(b), Fed.R.Civ.P., for a severance or, alternatively, pursuant to rule 403, Fed.R.Evid., to exclude the same evidence that Jerome Dansker and Suro Corporation seek to exclude. Defendant Carro Spanbock Londin Rodman & Fass ("Carro Spanbock"), IFC's outside legal counsel, has moved for judgment on the pleadings pursuant to rule 12(c), Fed.R. Civ.P., with respect to counts three, fifteen, and sixteen of the trustee's complaint. In addition, Carro Spanbock and three Carro Spanbock partners, Melvin J. Carro ("Carro"), Maurice Spanbock ("Spanbock"), and Jerome J. Londin ("Londin"),[2] have moved for a severance pursuant to rules 20(b), 21, and 42(b), Fed.R.Civ.P. For the reasons set forth below, the motions to exclude are granted and the motions for a severance are denied. Carro Spanbock's motion to dismiss counts three, fifteen, and sixteen is granted.

Procedural Background
Although familiarity with my earlier opinions in this matter is presumed, I think it useful to summarize the highlights. In an Opinion and Order dated November 19, 1980, In re Investors Funding Corp. of *1264 New York Securities Litigation (IFC I), 523 F.Supp. 533 (S.D.N.Y.1980), I granted in part the motions of defendants Peat, Marwick, Mitchell & Co., Jerome Lowengrub, S.D. Leidesdorf & Co., and Robert Saltman, IFC's auditors, to dismiss the claims against them. I held that to the extent that the auditors were alleged to have certified inaccurate financial statements which led to the issuance or sale of IFC securities, the proceeds of which were mismanaged or misapplied by IFC management, that mismanagement was not "in connection with the purchase or sale of a security," and the trustee had therefore failed to state a claim under sections 10(b) and 18 of the Securities Exchange Act of 1934 ("the '34 Act), 15 U.S.C. §§ 78j(b), 78r (1982), and under sections 339-a and 352-c of the New York General Business Law, N.Y. Gen. Bus. Law §§ 339-a, 352-c (McKinney 1984). 523 F.Supp. at 539. Moreover, to the extent that the trustee's allegations that the Danskers and others had looted the proceeds of securities transactions did satisfy the "in connection with" requirement, I held that the securities law claims against the auditors failed because of the absence of any proximate causal link between the auditors' alleged acts and any injuries to IFC. Id. at 540.
I also rejected the trustee's allegations of secondary liability, concluding that the auditors could not be held liable as aiders and abettors of another's primary securities law violation, nor could they be subject to liability as controlling persons under section 20 of the '34 Act, 15 U.S.C. § 78t (1982). Id. at 542-43. With respect to the trustee's nineteenth and twenty-seventh claims, I ruled that payments for professional services that allegedly failed to meet professional standards, while possibly giving rise to a malpractice action, neither constitute fraudulent transfers nor give rise to a breach of contract action. Id. at 549-50.
In an Opinion and Order dated January 12, 1982, In re Investors Funding Corp. of New York Securities Litigation (IFC II), No. 76 Civ. 4679 (S.D.N.Y. Jan. 12, 1982), I answered a question I had left open in IFC I namely, whether the trustee's allegations of a scheme on the part of the Danskers to loot the proceeds from the sale of IFC securities were adequate to satisfy the "in connection with" requirement of the federal and state securities laws. I concluded that the trustee's allegations were sufficient to satisfy that requirement, and I therefore denied the Danskers' motion to dismiss the trustee's securities law claims. Id., slip op. at 7-9.
In an Opinion and Order dated June 15, 1983, In re Investors Funding Corp. of New York Securities Litigation (IFC III), 566 F.Supp. 193 (1983), aff'd, 754 F.2d 57 (2d Cir.1985), I considered additional motions to dismiss from numerous other defendants, including Carro Spanbock. Because I found that the trustee's securities law claims against Carro Spanbock suffered from the same causation defects as his claims against IFC's auditors, I granted the law firm's motion to dismiss those claims. Id. at 201. With respect to the trustee's claim that Carro Spanbock had breached its agreement to provide legal services to IFC because of the deficient manner in which those services were performed, I reaffirmed my earlier holding that under New York law, allegations of a professional's failure to perform his job in accordance with the standards required of one in his field state a claim in tort or malpractice, but not in contract. I therefore dismissed the trustee's seventeenth claim against the law firm. Id. With respect to the trustee's claim that between 1972 and 1974 Carro Spanbock had been the recipient of fraudulent transfers totalling nearly $650,000, I reaffirmed my earlier ruling that fraudulent transfers under both the Bankruptcy Act and New York law do not encompass payments to a professional for services that failed to meet professional standards of performance. I therefore dismissed the trustee's twenty-seventh claim against the law firm. Id.
I also considered motions on behalf of Carro to dismiss the trustee's claims against him in his individual capacity, and on behalf of Spanbock and Londin to dismiss *1265 the trustee's claims against them in their capacities as investors in certain real estate ventures also named as defendants in the complaint. Id. at 202-03. I observed that unlike the allegations against the Carro Spanbock law firm, which arose in the context of legal advice it provided to IFC, the claims against Carro, Spanbock, and Londin concerned their alleged involvement in the very mechanism by which the Danskers and others were allegedly able to loot IFC's funds. I held that the causation requirement that was absent from the securities law claims asserted against IFC's auditors and legal counsel was satisfied with respect to Carro, Spanbock, and Londin, and I therefore denied their motion to dismiss the claims against them. Id. at 202-03.

Discussion
As I noted above, three motions are currently before the Court. Defendants Norman Dansker and Suro Corporation have moved to exclude certain evidence relating to an event that the parties refer to as "the Fort Lee bribery incident." Defendants Jerome Dansker and Henelo Corporation have moved for a severance based on the prejudice that would result from a joint trial in which the bribery evidence were introduced. In the alternative, Jerome Dansker and Henelo Corporation have moved to exclude the bribery evidence. Defendant Carro Spanbock has moved to dismiss certain claims against it. In addition, all the Carro Spanbock defendants have moved for a severance.

The Exclusion and Severance Motions
The Fort Lee bribery incident was the culmination of IFC's dealings with Arthur Sutton, a contractor, in connection with a real estate development in Fort Lee, New Jersey. Complaint ¶¶ 154-70. Various defendants are alleged to have diverted IFC funds from the company by causing it to make improper loans to Sutton in connection with the Fort Lee project. Id. ¶ 155. The diverted funds were allegedly used (1) to purchase certain IFC property, generating paper profits, id. ¶¶ 154-58; (2) to bail out a partnership in which the Danskers were investors, id.; (3) to make improvements on Norman Dansker's properties, id. ¶ 160; (4) to compensate certain other defendants, id.; and (5) to bribe two local officials of Fort Lee, New Jersey, in an attempt to obtain zoning variances for the Fort Lee complex, id. ¶¶ 161-70. The bribery scheme was discovered and eventually resulted in the prosecution and conviction of Norman Dansker and several other defendants. See United States v. Dansker, 537 F.2d 40 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
The moving defendants seek to exclude evidence of the bribery scheme and of the ensuing criminal prosecution and convictions. They contend that this evidence is highly prejudicial and that it will do little to substantiate the trustee's sweeping allegations of fraud and mismanagement of IFC's affairs. In response, the trustee argues that the bribery scheme was a part of the overall fraud at IFC and that the ensuing criminal indictments "were integral, critical and cumulative factors in precipitating IFC's demise."
Rule 403 provides that
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Fed.R.Evid. 403. Rule 403 requires the Court to engage in a conscious process of balancing the probative value of and need for the evidence sought to be excluded against the harm likely to result from its admission. 22 C. Wright & K. Graham, Federal Practice & Procedure: Evidence § 5214, at 263 (1978); Fed.R.Evid. 403 advisory committee note.
Having engaged in the balancing required by rule 403, I conclude that the probative worth of the evidence of the Fort Lee bribery incident is substantially outweighed by the danger of unfair prejudice that would result from its admission, and I therefore conclude that it should be excluded. *1266 First, the evidence of the bribery incident is of little or no probative value. The trustee has alleged that the Danskers and various other defendants "participated in a massive fraud on IFC, its stockholders, debenture holders and creditors." However, those defendants who participated in the bribery incident apparently did so to further IFC's financial interests, not to harm them. As the trustee himself points out, at the time the bribery scheme was first conceived, IFC had borrowed and re-loaned to Sutton over $31 million. "The growing enormity of IFC's investment in the Fort Lee project came to be the cornerstone of its continued existence and had a stranglehold on substantially all aspects of IFC's business, including cash flow, capital, losses, financings and bank loans." Trustee's Memorandum of Law in Opposition to Motion by Norman Dansker and Suro Corporation for an Order Excluding Certain Evidence at 6. In order to avoid a financial disaster, it was essential for IFC to obtain the required zoning variances. Id. at 5. To be sure, the fact that IFC did not succeed in securing the zoning variances it sought by means of the bribery scheme, that the bribery scheme was discovered, and that Norman Dansker and others were indicted, may well have hastened IFC's demise and the filing of its bankruptcy petition. However, the bribery itself was not a proximate cause of the damages IFC suffered.[3]
Second, there is little question that the evidence of the bribery incident is highly prejudicial. Because evidence of a party's prior criminal conduct is likely to induce decision on a purely emotional basis, it is precisely the sort of evidence at which rule 403 is directed. See, e.g., White v. Cohen, 635 F.2d 761, 762 (9th Cir.1981); Harless v. Boyle-Midway Div., Am. Home Prods., 594 F.2d 1051, 1058 (5th Cir.1979). Jerome Dansker was neither indicted nor convicted as a result of the bribery incident. Indeed, he retired from IFC nearly a year before the bribery scheme was even allegedly conceived. Yet, because Jerome and Norman share the same last name, there is a great risk that the bribery evidence would be considered with respect to him. Similarly, even though the Carro Spanbock defendants had no connection with the Fort Lee project, they would no doubt also be prejudiced by being associated with the participants in the bribery scheme.
Weighing the slight probative value of the bribery evidence against its great prejudicial effect, I conclude that it must be excluded under Fed.R.Evid. 403. Accordingly, I need not and do not consider the motions of Jerome Dansker, Henelo Corporation, and the Carro Spanbock defendants for a severance based on the prejudice that would result from a joint trial in which that evidence were introduced.

Carro Spanbock's Motion to Dismiss
Carro Spanbock has moved to dismiss counts three, fifteen, and sixteen of the complaint. Count three charges the law firm with aiding and abetting the commission of common law fraud. Carro Spanbock argues that I dismissed the securities claims against the firm in IFC III because the acts the law firm is alleged to have committed were not the proximate cause of IFC's damages. Relying on Bennett v. United States Trust Co., 770 F.2d 308 (2d Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), Carro Spanbock contends that the same causation requirement applies to common law fraud claims and that count three must therefore be dismissed.
Like his complaint, the trustee's argument in response is not a model of clarity. The trustee appears to argue that in determining that Carro Spanbock's activities were not the proximate cause of the damages suffered by IFC, this Court and the court of appeals considered only those activities *1267 Carro Spanbock took in connection with the various securities transactions. The trustee contends that Carro Spanbock's activities with respect to the overall fraud were more extensive and therefore sufficient to establish the required causation for count three.
After reviewing the trustee's complaint, I am inclined to agree that the trustee has alleged an adequate proximate causal connection between the acts Carro Spanbock is alleged to have committed in connection with the fraud as a whole and losses suffered by IFC. It is true that in considering Carro Spanbock's prior motion to dismiss the federal and state securities claims against it, this Court and the court of appeals considered only allegations of conduct of Carro Spanbock which concerned the alleged securities fraud. These allegations concerned primarily the preparation of SEC registration statements, 10-K statements, annual reports, prospectuses, and proxy statements.
However, the fraud alleged in the complaint involved much more than the securities transactions that were the focus of the prior motion to dismiss. The trustee has alleged that the Danskers defrauded IFC by, among other things, making interest free loans to real estate partnerships and joint ventures in which they and other defendants had invested. The trustee has also alleged that Carro, who invested in several of the partnerships and joint ventures, and who attended meetings of IFC's board of directors in his capacity as a partner in the Carro Spanbock law firm, failed to inform IFC's board that these loans and other interested director transactions with the partnerships were required to be approved by IFC's board of directors and its shareholders. It can hardly be gainsaid that losses to IFC were a reasonably foreseeable result of this failure on Carro's part.
Of greater concern to the Court is whether the trustee's claims against Carro Spanbock satisfy the scienter element necessary to establish the aiding and abetting claim. The trustee has alleged merely that Carro and the Carro Spanbock law firm "failed" to do certain things. While the trustee alleged that IFC's auditors acted in a reckless manner when they certified inaccurate financial statements, complaint ¶ 229, the trustee has not made similar allegations with respect to Carro Spanbock. The trustee has alleged only negligence on the law firm's part, and not recklessness or intentional conduct which is necessary for aiding and abetting liability.
Of course, allegations of acts or omissions on the part of Carro might be sufficient to subject the Carro Spanbock firm to aiding and abetting liability, if the trustee were able to allege that those acts or omissions were reckless or intentional. Under New York law a partnership as a whole as well as each of its members may be liable for torts committed by one of the partners acting in the scope of the firm's business. McDonnell v. American Leduc Petroleums, Ltd., 456 F.2d 1170, 1187 (2d Cir. 1972); Gerdes v. Reynolds, 28 N.Y.S.2d 622, 646 (N.Y.Sup.Ct.1941); see generally 16 N.Y.Jur.2d Business Relationships § 1411, at 113 (1981). However, the trustee's allegations with respect to Carro suffer from the same shortcomings as his allegations with respect to the law firm. The trustee alleges merely that Carro failed to convey certain information to IFC's board of directors. Like the trustee's allegations with respect to Carro Spanbock's preparation of misleading SEC filings, this is an allegation of malpractice, and not reckless or intentional conduct. Accordingly, the trustee's third claim is dismissed with leave to replead within seven days if the trustee can in good faith allege the necessary scienter on the part of Carro Spanbock.
Carro Spanbock has also moved to dismiss counts fifteen and sixteen. Count fifteen charges Carro Spanbock with converting IFC's money and assets by accepting payments from IFC in return for allegedly worthless legal services. Count sixteen charges that Carro Spanbock was unjustly enriched by having been paid for allegedly worthless legal services. Carro *1268 Spanbock argues that the conversion and unjust enrichment claims must be dismissed for the same reason that I dismissed the breach of contract and fraudulent conveyance claims in IFC IIInamely, that under New York law, malpractice is the proper claim to assert against a professional who fails to perform his job in accordance with the standards required of one in his field.
The trustee, on the other hand, contends that he has properly stated causes of action for conversion and unjust enrichment because he has alleged that Carro Spanbock received monies from IFC that the law firm should not have received. Trustee's Memorandum of Law in Opposition to Motions by Certain Defendants to Dismiss and For a Severance at 17-18. I cannot agree. The only payments to Carro Spanbock alleged in the complaint are payments for legal services rendered to IFC. The basis for the trustee's assertion that the law firm should not have received these payments is that the services that the firm rendered to IFC were worthless. The trustee has not alleged that Carro Spanbock was paid by IFC for services that it never performed or that it performed for someone other than IFC. See IFC III, 566 F.Supp. at 201. Nor has the trustee alleged that the payments to Carro Spanbock would have been excessive even if the law firm's services had met professional standards of performance. As I indicated in my earlier opinions, under these circumstances, the appropriate claim is malpractice, which the trustee asserts in count eighteen of the complaint. Accordingly, Carro Spanbock's motion to dismiss counts fifteen and sixteen is granted.

Conclusion
For the reasons set forth above, the motions of Norman Dansker, Suro Corporation, Jerome Dansker, and Henelo Corporation to exclude evidence of the "Fort Lee bribery incident" are granted. The motions of Jerome Dansker, Henelo Corporation, Carro Spanbock Londin Rodman & Fass, Melvin J. Carro, Maurice Spanbock, and Jerome J. Londin for a severance are denied. The motion of Carro Spanbock Londin Rodman & Fass to dismiss counts three, fifteen, and sixteen is granted. The trustee may amend his complaint to correct the defects in count three within seven days of the date of this Opinion and Order.
SO ORDERED.
NOTES
[1] References are to the amended complaint dated November 8, 1976, with further amendments dated August 5, 1983 and December 13, 1983.
[2] The Carro Spanbock law firm and Carro, Spanbock, and Londin are referred to collectively herein as "the Carro Spanbock defendants."
[3] In his briefs submitted in opposition to the exclusion motions, the trustee appears to assume that the various moving defendants seek to exclude all evidence of IFC's transactions concerning the Fort Lee project. This is clearly not the case, as the various defendants point out in their reply briefs. See, e.g., Reply Memorandum of Defendants Norman Dansker and Suro Corporation in Support of Motion for an Order Excluding Certain Evidence at 1.