In re INVESTORS FUNDING CORPORATION OF NEW YORK SECURITIES LITIGATION.

James BLOOR, as Trustee Pursuant to Chapter X of Title 11 of the United States Code of the Estates of Investors Funding Corporation of New York, etc., Plaintiff,

v.

Jerome DANSKER, et al., Defendants.

No. 76 Civ. 4679 (WCC).

United States District Court, S.D. New York.

June 15, 1983.

Anderson, Russell, Kill & Olick, P.C., New York City, for plaintiff; Richard W. Collins, Nicholas J. Zoogman, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendant Morris Karp; Peter Flemming, Jr., Mark H. O'Donoghue, New York City, of counsel.

Shea & Gould, New York City, for defendant Hyman Shapiro; Martin I. Shelton, New York City, of counsel.

Freedman, Levy, Kroll & Simonds, Washington, D.C., for defendants Peter K. Grunebaum, Irving Kessler and Marco Buitoni; Michael I. Smith, Washington, D.C., of counsel.

Segal & Hundley, New York City, for defendant David W. Katz & Co.; Marvin B. Segal, Edward M. Chikofsky, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendant Ely-Cruikshank Co.; W. Hubert Plummer and Thomas C. Junker, New York City, of counsel.

Spengler, Carlson, Gubar & Brodsky, New York City, for defendants Carro, Spanbock, Londin, Rodman & Fass, Melvin J. Carro, Maurice Spanbock and Jerome J. Londin; Edward Brodsky and Alison Rivard, New York City, of counsel.

Rubin, Baum, Levin, Constant & Friedman, New York City, for defendants Estate of Charles A. Berns, H. Jerome Berns, Eli Bloom, Harry Epstein, Ulu Grosbard, Herbert Jaffe, Stephen Katz, Jack Klatell, H. Peter Kreindler, Estate of I. Robert Kreindler, Estate of Maxwell A. Kreindler, Barbara Londin, Connie E. Naitove, Reginald Rose, Walter Seid, David Shaw, Stephen Solomon, Sheldon J. Tannen, Philip Tonken, Estate of Jess Ward and Dale Wasserman; Max Wild, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff James Bloor ("Trustee"), Chapter X Trustee for the Investors Funding Corporation of New York ("IFC"), instituted this action against a multitude of defendants alleging fraud in connection with the insolvency of IFC. The principal actors in the tragic drama described in the Trustee's voluminous complaint are Jerome, Norman and Raphael Dansker ("Danskers"), "the principal officers, controlling directors, controlling stockholders and the dominant force of IFC until some time prior

to October 21, 1974." Complaint ¶ 105.[1] IFC allegedly suffered massive damages at the hands of the Danskers, both as a result of certain management decisions and as a consequence of transactions by which the Danskers misappropriated IFC funds for the personal benefit of themselves and others. See Complaint ¶ 103 *et passim.* The Trustee asserts that as these actions, characterized as "the Fraud," Complaint ¶ 100, progressed, "larger and larger amounts of money were required and were obtained in order (i) to cover up the past fraudulent activities, management malfeasance and business reverses, (ii) to give IFC the false and misleading appearance of legitimacy and success and (iii) to continue the Fraud." See Complaint ¶ 104. On the basis of this false image of financial health, the Danskers were allegedly able to obtain for IFC huge quantities of funds from creditors, debenture holders, stockholders and other sources, Complaint ¶ 102, which monies were purportedly utilized to perpetuate and conceal the Fraud.

The case is currently before the Court on the motions of defendants Morris Karp ("Karp"), Hyman Shapiro ("Shapiro"), Peter Grunebaum ("Grunebaum"), Irving Kessler ("Kessler"), Marco Buitoni ("Buitoni"), David W. Katz & Co. ("Katz & Co."), Ely-Cruikshank Co. ("Ely-Cruikshank"), Carro, Spanbock, Londin, Rodman & Fass ("Carro-Spanbock"), Melvin J. Carro ("Carro"), Maurice Spanbock ("Spanbock"), Jerome Londin ("Londin") and a group of individual defendants including the estate of Charles A. Berns, H. Jerome Berns, Eli Bloom, Harry Epstein, Ulu Grosbard, Herbert Jaffe, Stephen Katz, Jack Klatell, H. Peter Kreindler, the estate of Maxwell A. Kreindler, Barbara Londin, Connie E. Naitove, Reginald Rose, Walter Seid, David Shaw, Stephen Solomon, Sheldon J. Tannen, Philip Tonken, the estate of Jess Ward and Dale Wasserman (collectively the "Joint Venture defendants") for judgment on the pleadings pursuant to Rule 12(c), F.R.Civ.P., or, alternatively, for summary judgment

pursuant to Rule 56, F.R.Civ.P., dismissing several of the claims against them. The relevant claims of the Trustee, not all of which are advanced against each moving defendant, are as follows:

—Third Claim Aiding and abetting common law fraud

—Fourth Claim Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Act")

—Fifth Claim Section 18 of the Act

—Sixth Claim Section 14 of the Act

—Seventh Claim Section 352–c of the New York General Business Law

—Eighth Claim Section 339–a of the New York General Business Law.

—Seventeenth Claim Common law breach of contract

—Twenty-first Claim Common law breach of contract

—Twenty-seventh Claim Fraudulent transfers under Section 67(d) of the Bankruptcy Act, 11 U.S.C. § 107, or §§ 273, 273–a, 274 or 275 of the New York Debtor and Creditor Law.

In an Opinion and Order dated November 19, 1980,[2] familiarity with which is presumed, this Court granted in part the motions of defendants Peat, Marwick, Mitchell & Co., Jerome Lowengrub, S.D. Leidesdorf & Co. and Robert Saltman (collectively the "Auditors") to dismiss the claims against them. Briefly, the Court held, with respect to the fourth, fifth, seventh and eighth claims, that to the extent the Auditors were alleged to have certified inaccurate IFC financial statements which led to the issuance or sale of IFC securities, the proceeds of which were mismanaged or misapplied by IFC management, such claims did not arise in connection with the purchase or sale of a security, and thus failed to state a claim under § 10(b) or § 18 of the Act or under § 352–c or § 339–a of the New York General Business Law. See *IFC I*, 523 F.Supp. at 539 (citing *Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523 (9th Cir.1976)). Moreover, to the extent that the

---

1. All references are to the Trustee's amended complaint, dated November 8, 1976.

2. 523 F.Supp. 533 (S.D.N.Y.1980) (Conner, J.) (hereinafter cited as "*IFC I*").

Trustee's allegations of looting of the proceeds by the Danskers and others satisfied the "in connection with" requirement,[3] the claims against the Auditors failed because of the absence of any proximate causal relationship between the Auditor's alleged acts and the injuries to IFC. See *id.* at 540.

The Court also rejected the two theories of secondary liability proffered by the Trustee, concluding that the Auditors could not be found liable as aiders and abettors of another's primary violation of § 10(b) or § 18, nor could they be subject to liability as controlling persons under § 20 of the Act. See *id.* at 542–43. With respect to the Trustee's nineteenth and twenty-seventh claims, the Court ruled that payments for professional services which allegedly failed to meet professional standards, while possibly giving rise to a malpractice action, neither constitute fraudulent transfers nor give rise to a breach of contract claim. Accordingly, the Auditors' motions to dismiss the twenty-seventh claim and the breach of contract portion of the nineteenth claim were also granted.[4] See *id.* at 549–50.

In the instant motions, each defendant seeks to obtain dismissal of the claims asserted against him by riding on the coattails of the Auditors. Each moving defendant argues that his situation is sufficiently analogous to that of the Auditors to require similar treatment. Because the outcome of each motion depends upon the particular circumstances of each defendant or group of defendants, each will be considered separately.

*Morris Karp*

█ Karp has moved to have the Court dismiss the Trustee's fourth, fifth, seventh and eighth claims for relief against him. In its November 1980 Opinion, this Court ruled that the "in connection with" requirement is a necessary element of both the federal securities law violations alleged in the Trustee's fourth and fifth claims, see *IFC I,* 523 F.Supp. at 537, and the state securities law violations asserted in his seventh and eighth claims. See *id.* at 544. The Court later found that the Trustee's allegations of a scheme to loot IFC of the proceeds from the sale of securities could, under *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), satisfy this requirement, and accordingly held that the Complaint sufficiently pleads securities law claims against the Danskers. See *IFC II,* slip op. at 7–9. In view of that ruling, Karp's motion must be denied.

Paragraphs 110 through 133 of the Trustee's Complaint set forth Karp's alleged contribution to the Fraud. The Trustee asserts that pursuant to certain secret agreements between Karp and Norman Dansker, IFC entered into a continuing series of sham real estate transactions with Realty Equities, a company controlled by Karp, which enabled IFC to report a false and rosy picture of its financial health. Unlike the involvement of the Auditors, whose contribution was limited to the negligent or reckless preparation of financial statements, the Trustee has plausibly alleged that Karp knowingly engaged in fraudulent schemes with the Danskers,

---

**3.** In dismissing the fourth, fifth, seventh, and eighth claims against the Auditors because of the absence of a causal link, the Court expressed no opinion whether the underlying allegations of looting satisfy the "in connection with" requirement needed to establish both the federal and state securities laws violations asserted by the Trustee. In a later decision, rendered on January 12, 1982, the Court reached this issue in denying the Danskers' motion to dismiss these claims, and concluded that the allegations in the Complaint of a scheme on the part of the Danskers to loot the proceeds from the sale of IFC securities satisfies this requirement. Thus, the Complaint sufficiently pleads a violation of the securities laws by the Dansk-

ers. See slip op. at 7–9 (S.D.N.Y. Jan. 12, 1982) (Conner, J.) (citing *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)) (hereinafter cited as "*IFC II*").

**4.** The Trustee's sixth claim was also dismissed as against the Auditors without objection. In his memorandum in opposition to the instant motions, the Trustee does not object to dismissal of his sixth claim for relief and that portion of his fourth claim alleging violations of § 20 of the Act. Accordingly, all motions to dismiss those claims are granted.

which schemes enabled the Danskers to perpetuate the Fraud by hiding the fact of IFC's financial illness. In such a situation, the continuous looting of IFC by the Danskers, which forms the basis of the securities law violations alleged by the Trustee, was a direct and arguably foreseeable consequence of Karp's involvement, and thus does not suffer from the lack of causal linkage that was fatal to the Trustee's claims against the Auditors. The reasoning of this Court's ruling in *IFC I* is accordingly inapplicable to Karp. His motion to dismiss is therefore denied.

*Hyman Shapiro*

■ Shapiro has moved for judgment on the pleadings or, alternatively, for summary judgment dismissing the Trustee's twenty-seventh claim for relief against him. That claim alleges that Shapiro received six fraudulent transfers between April 1972 and February 1973. Although Shapiro's motion does not follow directly from this Court's conclusion in *IFC I* that payments for improperly rendered professional services cannot serve as the basis for a fraudulent transfer claim, the Court concludes, nevertheless, that it should be granted.

In Paragraph 123 of the Complaint, the Trustee alleges that Shapiro participated in the Fraud by agreeing to purchase properties from Realty Equities at inflated prices and by diverting construction loan advances from IFC to make mortgage payments to IFC on those properties. In the Report of the Trustee of Investors Funding Corporation of New York and its Debtor Subsidiaries, dated December 8, 1976 (the "Trustee's Report"), the Trustee sets forth in detail the loans from IFC to Shapiro which were allegedly diverted wrongfully to make mortgage payments to IFC. See Trustee's Report at 10.3–.4. The six transfers to Shapiro enumerated by the Trustee in his twenty-seventh claim for relief are not on that list, nor does the Trustee's basis for his claim that those six payments were fraudulent appear elsewhere in either the Complaint or the Trustee's Report.

In support of his motion, Shapiro has submitted the affidavit of Karp, which sets forth the consideration Shapiro provided to IFC for each of the six allegedly fraudulent transfers. The Trustee has not submitted any further evidence to support his claim that the transfers were fraudulent, but has relied solely upon the bare allegation contained in Paragraph 242 of his Complaint. This clearly does not fulfill his burden under Rule 56, F.R.Civ.P. See *State of New York v. Gorsuch*, 554 F.Supp. 1060, 1062 (S.D.N.Y.1983) (Conner, J.). Accordingly, Shapiro's motion for summary judgment dismissing the Trustee's twenty-seventh claim for relief against him is granted.

*Peter K. Grunebaum, Irving Kessler and Marco Buitoni*

Grunebaum, Kessler and Buitoni have moved for judgment on the pleadings dismissing the Trustee's fourth, fifth, seventh and eighth claims for relief against them. They claim that their positions as outside directors of IFC place them in a role analogous to that of the Auditors, and consequently that any damage suffered by IFC as a result of the Fraud was not the proximate result of their alleged wrongdoing. This argument, however, misconstrues the role of an outside corporate director.

The alleged contribution of the Auditors to the Fraud was their certification of financial statements that the Trustee claims overstated IFC's financial condition. See *IFC I*, 523 F.Supp. at 536–37. In *IFC I*, the Court ruled that although it is foreseeable that such statements will enable securities issued and sold by a corporation to command an artificially high price in the market, and thus injure purchasers, it is not foreseeable that inside management will embezzle the funds received. *Id.* at 540. The rationale for this ruling was, in part, based on the fact that the Auditors had no control over IFC's management, nor indeed did they have any connection with IFC's management except in their capacity as IFC's independent accountants. To the contrary, Grunebaum, Kessler and Buitoni were all directors of IFC. Although the responsibilities imposed upon outside directors of a corporation are not stringent, it is clear that "the proper role of these non-

officer directors is that they should supervise the performance of the management." *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1306 (2d Cir.1973) (*en banc*). Thus, any management malfeasance was a direct, and not an unforeseeable, consequence of the directors' neglect of their directorial responsibilities. Accordingly, the Trustee's claims against Grunebaum, Kessler and Buitoni do not suffer from the absence of causal linkage that was fatal to his claims against the Auditors.

■ Of greater concern to the Court is the question whether the Trustee's claims against the outside directors can satisfy the scienter element that is necessary to establish both the federal and the state securities law claims asserted here. Despite the Trustee's overly colorful characterization of the involvement of these directors in the Fraud, he has in his Complaint actually alleged little more than that they completely failed to carry out their duties as directors of the corporation. In *Greene v. Emersons, Ltd.,* 86 F.R.D. 66 (S.D.N.Y.1980), Judge Haight of this Court ruled that an outside director's failure to discover the improprieties of a corporation's officers, even if such behavior could be characterized as "reckless," does not constitute scienter which, under those circumstances, requires something closer to an actual intent to defraud. See *id.* at 72–73. Thus, he dismissed the plaintiffs' § 10(b) and Rule 10b–5 claims against the outside directors for failure to state a claim upon which relief can be granted. *Id.* at 73. For that same reason, the Trustee's fourth, fifth, seventh and eighth claims for relief against Grunebaum, Kessler and Buitoni are dismissed with leave to replead within thirty days if the Trustee can in good faith allege a more substantial involvement by these outside directors in the asserted Fraud.

*David W. Katz & Co.*

■ Katz & Co., an accounting firm, has moved for judgment on the pleadings or, alternatively, for summary judgment dismissing the Trustee's twenty-seventh claim for relief against it on the ground that the allegedly fraudulent transfers set forth in Paragraph 242 of the Trustee's Complaint were payments for professional services and, like the payments to the Auditors, cannot be considered fraudulent transfers even if those services failed to meet professional standards. The motion, however, misconstrues the nature of the Trustee's allegations against Katz & Co. While the Trustee's Complaint is far from a model of clarity and good draftsmanship, it does allege, albeit somewhat disjointedly, that the payments to Katz & Co. were for services that were *never* performed for IFC and not, as Katz & Co. believes, for services that were performed but failed to meet professional levels of competence.

In Paragraph 3(e)(4) of the Complaint, the Trustee describes Katz & Co. as "a partnership engaged in the practice of public accounting [which] purportedly performed accounting services for IFC and *performed accounting services for the Danskers which were charged to IFC."* Complaint ¶ 3(e)(4) (emphasis added). The fraudulent transfer claim, which appears at Paragraph 242 of the Complaint, states only that Katz & Co. received three payments from IFC, totalling $32,500, which payments are alleged to have been fraudulently made. In view of the absence of any further allegations against Katz & Co., or indeed any further mention of Katz & Co., the only plausible reading of the Complaint is that these three payments are alleged to have been made by IFC as compensation for services performed by Katz & Co. for the Danskers rather than for IFC itself. If proved, these allegations constitute a valid right of recovery on the part of the Trustee under the bankruptcy laws. On the other hand, if Katz & Co. is able specifically to document that the payments set forth in Paragraph 242 of the Complaint were for services rendered to IFC, then it might be able to succeed in a motion for summary judgment. On the current state of the record however, both the motions for judgment on the pleadings and for summary judgment must be denied.

*Ely-Cruikshank Co.*

■ Ely-Cruikshank is a real estate appraiser which appraised property owned by

IFC and located at 320 Harrison Street in East Orange, New Jersey. The Trustee alleges in Paragraphs 208–10 of the Complaint that Ely-Cruikshank appraised that property at an unreasonably high value, with the knowledge that the appraised value would be used by IFC's auditors to prepare IFC's financial statements and by IFC to obtain credit and sell securities. Ely-Cruikshank has moved for judgment on the pleadings dismissing the Trustee's fourth, fifth, seventh and eighth claims for relief against it on the ground that its position as an appraiser is analogous to the Auditor's role with respect to the looting by the Danskers. It has also moved to dismiss the portion of the Trustee's twenty-first claim for relief that alleges a breach of contract and to limit the third claim against Ely-Cruikshank in the same manner that it was limited against the Auditors in *IFC I.* All of these motions are granted, substantially for the reasons set forth in *IFC I.*

The Trustee's securities law claims against Ely-Cruikshank suffer from the same causal failing that was fatal to his claims against the Auditors. As noted in *IFC I,* in order for any of the federal and state securities law claims asserted by the Trustee to be actionable, the injury to the bankrupt estate must have been the proximate result of the misleading statements or omissions complained of. See *IFC I, supra,* 523 F.Supp. at 539, 544. While it was arguably foreseeable that, as a result of appraisals overstating the value of assets of the corporation, securities issued and sold by IFC would command a higher price than their true value, thus injuring purchasers and providing excessive funds to the corporation, it was not reasonably foreseeable that inside management of IFC would embezzle the funds so received for their personal use. See *id.* at 540 (same reasoning set forth in greater detail with respect to the Auditor's inaccurate financial statements). Accordingly, the Trustee's fourth, fifth, seventh and eighth claims for relief are dismissed as against Ely-Cruikshank.

■ In *IFC I,* the Court dismissed the contract portion of the Trustee's nineteenth claim for relief against the Auditors on the ground that a claim against an accountant for failure to perform his duties in accordance with generally accepted accounting principles states only a claim in tort or malpractice, not in contract. See *id.* at 546 (relying on *Carr v. Lipshie,* 8 A.D.2d 330, 187 N.Y.S.2d 564 (1st Dep't 1959), *aff'd,* 9 N.Y.2d 983, 218 N.Y.S.2d 62, 176 N.E.2d 512 (1961)). The appraisers' counterpart of that claim is contained in the twenty-first claim for relief, wherein the Trustee alleges that the appraisers "breached their contractual obligations to perform appraisal services in accordance with the professional standards applicable to them." Complaint ¶ 528. The claim against the appraisers, like the claim against the Auditors, asserts as a theory of recovery that the failure of a professional to perform his work at a professional level of competence constitutes a breach of contract. Absent any showing by the Trustee to demonstrate that appraisers should be treated differently from auditors on this point, the Court concludes that the claims are analogous. Accordingly, the Trustee's twenty-first claim for relief is dismissed insofar as it asserts a breach of contract claim against Ely-Cruikshank.

■ The Trustee's third claim for relief alleges that Ely-Cruikshank, among others, aided and abetted the commission of common law fraud. In *IFC I,* the Court ruled that although the injuries upon which the Trustee based this claim need not have been incurred in connection with the purchase or sale of securities, they still must have been proximately connected to the participation of the alleged aider and abettor. *Id.* at 545. Thus, the Court held that to the extent the Trustee sought to hold the Auditors liable on the basis of amounts looted from IFC by the Danskers, his claim failed to satisfy the requirement of causal nexus. But to the extent he sought recovery from them for amounts other than the alleged misappropriations by the Danskers, he would have to prove facts sufficient to establish a proximate causal connection between the Auditors' acts and the damages to IFC. *Id.* at 545–46. In view of the Court's current

ruling that the actions of Ely-Cruikshank were not the proximate cause of the looting by the Danskers, this same limitation will be applied to the Trustee's third claim for relief against it.

### Carro Spanbock Londin Rodman & Fass, Melvin J. Carro, Maurice Spanbock and Jerome J. Londin

Carro Spanbock, IFC's outside legal counsel, has moved for judgment on the pleadings or, alternatively, for summary judgment dismissing the Trustee's fourth, fifth, seventh, eighth, seventeenth and twenty-seventh claims for relief against it. Carro, Spanbock and Londin, members of that firm, have made the same motion with respect to the Trustee's fourth, fifth, seventh and eighth claims asserted against them individually or in their capacity as investors in several IFC-sponsored real estate ventures. The Trustee alleges in Paragraphs 231–38 of the Complaint that Carro Spanbock provided improper legal advice to IFC concerning IFC's securities disclosures and its transactions with interested directors. The individuals Carro, Spanbock and Londin are alleged to have participated in the Fraud by virtue of their investments in certain real estate deals characterized by the Trustee as fraudulent, and Carro is further claimed to have been an active participant in the secret arrangements underlying some of those deals. See Complaint ¶ 126.

■ The Trustee's claims against Carro Spanbock suffer from the same failings as his claims against the Auditors and Ely-Cruikshank, and thus the firm's motion for judgment on the pleadings dismissing those claims must be granted. Assuming, as this Court must for purposes of this motion, that Carro Spanbock rendered legal services to IFC in the manner alleged by the Trustee, the firm's advice led directly to the preparation and dissemination of misleading prospectuses and registration statements, by means of which IFC securities were sold to the public at fraudulently inflated prices. As this Court previously noted with respect to the certification of mis-

leading financial statements by the Auditors, such action might well have been a substantial factor in the injury suffered by investors, but it was not a proximate cause of the injury to IFC for which the Trustee seeks redress here. See *IFC I, supra,* 523 F.Supp. at 542–43. Accordingly, for that same reason, the fourth, fifth, seventh and eighth claims for relief against Carro Spanbock are dismissed.

■ The Trustee's seventeenth claim for relief alleges that Carro Spanbock breached its agreement to provide legal services to IFC because of the deficient manner in which those services were performed. The claim is conceptually identical to the breach of contract claims asserted against the Auditors and the appraiser, Ely-Cruikshank, both of which have already been dismissed by the Court. In dismissing those claims, this Court ruled that under New York law a professional's failure to perform his job in accordance with the standards required of one in his field states a claim in tort or malpractice, but not in contract. Since the Trustee's claims against Carro Spanbock allege nothing more than this, and because there appears to be no legal basis for distinguishing attorneys from accountants or appraisers in this respect, the seventeenth claim for relief is also dismissed.

■ The twenty-seventh claim for relief alleges that between 1972 and 1974 Carro Spanbock was the recipient of fraudulent transfers totalling nearly $650,000. See Complaint ¶¶ 242, 536. The Trustee has neither alleged in the Complaint nor argued in his motion papers that these transfers were other than payments to Carro Spanbock for legal services. Unlike the allegations against Katz & Co., there is no claim that Carro Spanbock was paid by IFC for services that it never performed or that it performed for someone other than IFC. Accordingly, in view of this Court's prior ruling that fraudulent transfers under both the Bankruptcy Act and New York law do not encompass payments to a professional for services which failed to meet professional standards of performance, the Trustee's

**202**

twenty-seventh claim for relief is dismissed against Carro Spanbock.

 The Trustee's securities law allegations against Carro in his individual capacity stand, however, on a completely different footing than his claims against the firm. Unlike the allegations against the firm, see Complaint ¶¶ 231–34, which arise in the context of the legal advice it provided to IFC, the individual claims against Carro concern his asserted involvement in business dealings with IFC unrelated to the legal services being offered by his firm. In Paragraphs 126 and 134 of the Complaint, the Trustee alleges that Carro, along with Jerome Dansker, was the motivating force behind the formation and operation of three real estate ventures, denominated the Plummer Venture, the Hampshire Towers Venture and the Spanbock Venture (the "Ventures"). Under the scenario sketched by the Trustee, Carro formed the three Ventures by organizing groups of investors. Carro and Jerome Dansker then entered into secret agreements governing the sale of property to each of the three Ventures, which enabled IFC to report sham profits and provided the Ventures with sweetheart deals at IFC's expense. See Complaint ¶¶ 126–34. Thus, Carro was in a position not unlike that of Karp, whose situation was discussed above.

Because the alleged involvement of both Carro and Karp occurred at different stages of the Fraud from that of the Auditors, their participation is not analogous to that of the Auditors. While a foreseeable effect of the Auditors' involvement was that IFC was able to obtain through the sale of securities more money than would otherwise have been available, the Court in *IFC I* held that it was not reasonably foreseeable that the Auditors' participation would lead to the looting of those excess funds. Accordingly, the Court rejected the Trustee's at-

tempt to connect the Auditors' limited involvement to the ultimate injury suffered by IFC by a series of "but for" links. See 523 F.Supp. at 540.

Here, by contrast, Carro, like Karp, is alleged by the Trustee to have been involved directly in the process by which these funds were diverted from IFC. The purportedly fraudulent manner in which these real estate transactions were set up not only enabled IFC to portray a false picture of financial health, and thus to obtain more money through securities sales on the basis of materially overstated financial statements, but it also provided the mechanism through which the Danskers and others were allegedly able to loot the funds previously obtained. See *id.* at 541. The ultimate injury to IFC is not, therefore, free of clear causal linkage to Carro's conduct, but follows instead as a direct and proximate result of the acts he is alleged to have committed. Accordingly, the motion of Carro to dismiss the Trustee's fourth, fifth, seventh and eighth claims for relief against him is denied.

The Trustee in his fourth, fifth, seventh and eighth claims for relief has also asserted securities law claims directly against the Plummer Venture, the Hampshire Towers Venture and the Spanbock Venture. Spanbock and Londin have moved in their capacities as investors in the Ventures [5] to dismiss these claims under the authority of *Rochelle v. Marine Midland Grace Co.,* 535 F.2d 523 (9th Cir.1976), and this Court's ruling in *IFC I.* Inherent in the above discussion concerning Carro, however, is the Court's conclusion that, as alleged by the Trustee, the transactions between IFC and the Ventures satisfy the causation requirement that was absent from the securities law claims asserted against the Auditors. Thus, Spanbock's and Londin's motion to dismiss these securities law claims on the

---

**5.** Spanbock is named by the Trustee as an investor in all three Ventures, while Londin is named only in the Spanbock Venture. Complaint ¶ 3(j)(2). The Complaint, which as noted several times previously is far from artfully drafted, appears to assert securities law claims only against the Ventures as entities and not

against the individual investors in those Ventures. Since Spanbock and Londin do not purport to be acting on behalf of any of the three Ventures, their standing to make the instant motion is subject to question. In view of the Court's decision to deny the motion, however, it need not reach that point.

ground that the injuries suffered by IFC were not causally related to the conduct of the Ventures must be denied.

*Joint Venture Defendants*

The Joint Venture Defendants, like Spanbock and Londin, were investors in some or all of the Ventures. They have not moved to dismiss the securities law claims asserted against the Ventures, but have moved against the Trustee's sixteenth and twenty-seventh claims for relief, which allege that the participants in the Ventures were unjustly enriched and received fraudulent transfers from IFC. As the above discussion and the Court's analysis in *IFC I* point out, the Complaint alleges that the transactions between IFC and the Ventures involved sham arrangements and imprudent deals and were generally adverse to IFC's interests. In the face of these allegations, the Court cannot rule, as urged by these defendants, that there is no theory under which the transfers from IFC to the Ventures could have been for less than fair value or could in any way have harmed IFC.

At the same time, the Court agrees with the Joint Venture Defendants that the complaint does not adequately set forth the basis for the Trustee's claims that these investors were unjustly enriched by payments from IFC or that those payments constituted fraudulent transfers. In interpreting the Trustee's poorly drafted Complaint, the Court has displayed an extremely liberal attitude toward drawing all reasonable inferences from the disjointed allegations contained in the pleading. The unjust enrichment and fraudulent transfer claims, however, are set forth in the barest and most generalized of terms and simply list these defendants as among a multitude of defendants who are alleged to have received improper payments. In his fraudulent transfer claim, the Trustee, after listing more than ten pages of purported fraudulent transfers to a host of unrelated defendants, generally alleges that "some or all" of those transfers were made in violation of New York and federal law. The Complaint never sets forth which of the various alternative legal prohibitions are applicable to any particular transferee nor does it describe any background facts relevant to each defendant to support the Trustee's claim that the payments to that defendant were fraudulent conveyances. See Complaint ¶¶ 242–49. The unjust enrichment claim suffers similarly from the disease of overgeneralization. See Complaint ¶ 516. Accordingly, these claims will be dismissed with leave granted to the Trustee to replead within thirty days.

*Summary*

For the reasons stated above, all motions to dismiss the Trustee's sixth claim for relief are granted, as are all motions to dismiss that portion of his fourth claim which asserts a violation of § 20 of the Act. The motions of Karp, Carro, Spanbock and Londin to dismiss the claims against them are denied. Shapiro's motion for summary judgment dismissing as against him the Trustee's twenty-seventh claim for relief is granted, as are the motions of David W. Katz & Co., Ely-Cruikshank and Carro Spanbock. The fourth, fifth, seventh and eighth claims for relief are dismissed as against Grunebaum, Kessler and Buitoni, except that the Trustee is given leave to replead these claims within thirty days of the date of this Opinion and Order. Similarly, the Trustee's sixteenth and twenty-seventh claims for relief are dismissed as against the Joint Venture Defendants with leave to replead within thirty days.

SO ORDERED.