MESKILL, Circuit Judge:
 

 This action is before us on appeal from a judgment entered in the United States District Court for the Southern District of New York, Conner, J., dismissing certain claims by James Bloor, Trustee for Investors Funding Corporation of New York (IFC) against defendant Carro, Spanboek, Londin, Rodman & Fass (Carro Spanboek). Plaintiff-Appellant asserts that the district court erred in ruling that section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), is inapplicable. Because we agree that section 10(b) provides no remedy for IFC’s alleged injury, we affirm.
 

 Background
 

 This case is the latest in a series of actions resulting from the insolvency of Investors Funding Corporation of New York and related corporations.
 
 In re Investors Funding Corp. of New York Securities Litigation,
 
 523 F.Supp. 533 (S.D.N.Y.1980) (I
 
 FC I); In re Investors Funding Corp. of New York Securities Litigation,
 
 No. 76 Civ. 4679 (S.D.N.Y. Jan. 12, 1982)
 
 (IFC II); In re Investors Funding Corp. of New York Securities Litigation,
 
 566 F.Supp. 193 (S.D.N.Y.1983)
 
 (IFCIII); In re Investors Funding Corp. of New York Securities Litigation,
 
 36 B.R. 1019 (S.D.N.Y.1983) (I
 
 FC IV).
 
 In October 1974 IFC filed a petition for reorganization under Chapter X of the Bankruptcy Act. In November of that year, plaintiff-appellant James Bloor (Bloor or Trustee) was appointed Reorganization Trustee for IFC. Bloor filed suit in 1976 against a number of defendants alleging that a massive fraud had precipitated IFC’s downfall. He alleged that the principal officers and controlling stockholders of IFC, the Danskers, had mismanaged and looted corporate funds, resulting in IFC’s insolvency. Apparently because the alleged fraud involved the issuance of stock, the Trustee’s suit was partially premised on securities law violations and included as defendants the Danskers, IFC’s auditors, Peat, Marwick, Mitchell & Co. (PMM), and Carro Spanboek, counsel to IFC.
 

 Although familiarity with the earlier district court opinions of Judge Conner is presumed, we will summarize the highlights. In
 
 IFC I,
 
 the court, in disposing of PMM’s motions for partial judgment on the pleadings or for partial summary judgment, divided the allegations into those concerning “mismanagement” and those concerning “looting.” 523 F.Supp. at 539. The court held that the “in connection with the purchase or sale of a security” requirement of Section 10(b) of the Securities Exchange Act of 1934 had not been met on the mismanagement claims.
 
 Id.
 
 On the looting claims, the court found that, even if the “in connection with” requirement were met, the actions of PMM were not the proximate cause of IFC’s damages.
 
 Id.
 
 Therefore, the court held that the Trustee’s allegations concerning PMM were not sufficient to state a claim under section 10(b) of the Securities Exchange Act of 1934.
 
 IFC I
 
 at
 
 *60
 
 540. The court also rejected the Trustee’s allegations of secondary liability, concluding that PMM could not be held liable as an aider and abettor of a securities law violation.
 
 Id.
 
 at 542-43.
 
 [1]
 
 In an order dated December 10, 1980, Judge Conner directed all defendants to file motions to dismiss, for judgment on the pleadings or for summary judgment on the grounds discussed in
 
 IFC I.
 
 J.App. at 307.
 

 In January 1982, in response to a motion for judgment on the pleadings from the Danskers, the court answered a question that it had left open in
 
 IFC I:
 
 whether the looting claims were adequate to satisfy the “in connection with the purchase or sale of a security” requirement of section 10(b). The court concluded that there was a sufficient connection between the looting and the purchase or sale of securities,
 
 IFC II,
 
 Opinion and Order at 7, and denied the Danskers’ motion for dismissal of the securities law claims.
 

 In
 
 IFC III,
 
 the court considered additional dismissal motions from a number of defendants, including appellee Carro Span-bock. Because it found that the Trustee’s claims against the law firm suffered from the same causation defects as those against PMM, the court granted Carro Spanbock’s motion. 566 F.Supp. at 201.
 

 Following this dismissal, the Trustee moved for reargument in the district court or, in the alternative, for certification of questions of law to this Court under 28 U.S.C. § 1292(b).
 
 IFC IV,
 
 36 B.R. at 1020. The court denied the motion for reargument, stating that “even accepting
 
 arguen-do
 
 the truth of those allegations, there is no legal basis for permitting a recovery
 
 by the Trustee
 
 against ... the ... attorneys for a violation of the securities laws.”
 
 Id.
 
 at. 1022. The court also refused to certify the orders for interlocutory appeal to this Court because the issue in question was not “controlling” and because such an appeal would delay the ultimate resolution of the matter.
 
 Id.
 
 at 1022-23.
 

 The Trustee then moved, pursuant to Fed.R.Civ.P. 54(b), for entry of final judgment as to the portion of the court’s order in
 
 IFC III
 
 that dismissed the securities law claims against Carro Spanbock.
 
 [2]
 
 That motion was granted in an order dated April 30, 1984. J.App. at 362. This appeal followed.
 

 Discussion
 

 On appeal the Trustee contends that the district court erred in dividing the claims into “mismanagement” and “looting” categories and in its reasoning as to the legal significance of those characterizations.
 
 [3]
 
 Because we believe that the causation issue
 
 *61
 
 is dispositive, we need not consider this contention.
 

 In considering a Rule 12(c) motion, the court must accept as true all of the well pleaded facts alleged in the complaint and may not dismiss the action unless the court is convinced that “ 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.’ ”
 
 George C. Frey Ready-Mixed, Concrete, Inc. v. Pine Hill Concrete Mix Corp.,
 
 554 F.2d 551, 553 (2d Cir.1977), quoting
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).
 

 In order to state a claim for relief under section 10(b) a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiffs reliance on defendant’s actions caused him injury.
 
 Chemetron Cory. v. Business Funds, Inc.,
 
 718 F.2d 725, 728 (5th Cir.1983);
 
 Zobrist v. Coal-X, Inc.,
 
 708 F.2d 1511, 1516 (10th Cir.1983);
 
 Schlick v. Penn-Dixie Cement Corp.,
 
 507 F.2d 374, 381 (2d Cir.1974),
 
 cert. denied,
 
 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975);
 
 Haberman v. Murchison,
 
 468 F.2d 1305, 1311 (2d Cir.1972). The district court considered only two parts of this standard: the “in connection with” and causation requirements. In deciding this appeal, the analysis need go no further.
 

 Even if we were to adopt the broadest interpretation of “in connection with,”
 
 see Superintendent of Insurance v. Bankers Life & Casualty Co., 404
 
 U.S. 6, 12-13, 92 S.Ct. 165, 168-169, 30 L.Ed.2d 128 (1971) (connection sufficient where deceptive practices “touch” sale of securities), and find an adequate connection between the securities sales and any damage suffered by IFC, the Trustee’s complaint against Carro Span-bock must still fail because of the causation requirement for a section 10(b) claim.
 

 A plaintiff seeking to recover for a violation of section 10(b) must show that the act complained of caused the injury suffered.
 
 Titan Group, Inc. v. Faggen,
 
 513 F.2d 234, 239 (2d Cir.),
 
 cert. denied,
 
 423 U.S. 840, 96 S.Ct. 70,
 
 46
 
 L.Ed.2d 59 (1975);
 
 Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 495 F.2d 228, 238-39 (2d Cir.1974).
 
 See also Affiliated Ute Citizens v. United States,
 
 406 U.S. 128, 154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Where a 10(b) claim concerns a misrepresentation, the plaintiff must show that “ ‘the damage was either a direct result or a reasonably foreseeable result of the misleading statement.’ ”
 
 Globus v. Law Research Service,
 
 418 F.2d 1276, 1291 (2d Cir.1969) (quoting trial court’s jury charge),
 
 cert. denied,
 
 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). Even where a 10(b) claim is based not on specific misrepresentations or omissions, but rather on a “comprehensive scheme to defraud,” the plaintiff must still demonstrate causation in fact by showing that defendant’s allegedly fraudulent activities were actually responsible for plaintiff’s injuries.
 
 Competitive Associates v. Laventhol, Krekstein, Horwath & Horwath,
 
 516 F.2d 811, 814 (2d Cir.1975).
 

 We have held that where the complaint alleges a broad-based scheme to defraud, the allegations of actual causation must be in the form of “loss causation” and must assert that the 10(b) violations caused the claimed economic loss.
 
 Chemical Bank v. Arthur Andersen & Co.,
 
 726 F.2d 930, 943 & n. 23 (2d Cir.),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984);
 
 Schlick,
 
 507 F.2d at 380-81. This required causal connection may not be supplied by “but for” allegations.
 
 Chemical Bank,
 
 726 F.2d at 943.
 

 In order to adequately claim “loss causation,” the Trustee must allege facts showing that the economic harm suffered by IFC occurred as a result of the challenged activities.
 
 Schlick,
 
 507 F.2d at 380. The Trustee’s complaint described the source of this dispute as “a massive and continuing fraud and deceit upon IFC, its creditors, debenture holders, stockholders and the public (the “Fraud”).” ¶ 100, J.App. at 65. The allegations against Carro Spanbock concern,
 
 inter alia,
 
 the firm’s assistance in
 
 *62
 
 the preparation of SEC registration statements, 10-Ks, annual reports and proxy statements which omitted or misrepresented information. Bloor contends that without Carro Spanbock’s participation in these activities, IFC would have been unable to acquire the “large amounts of money” necessary to “perpetrate and maintain the Fraud.” ¶ 235, J.App. at 97. These claims allege only “but for” causation and fail to show that IFC’s subsequent losses were caused by Carro Spanbock’s actions.
 

 By failing to allege that the proceeds of the sales were inadequate and by admitting that the corporation received “large amounts of money” for the sale of the stock, Bloor necessarily undercut any claim that the harm later suffered by the corporation was the result of Carro Span-bock’s activities. Any damage sustained by IFC, the only cognizable plaintiff here,
 
 [4]
 
 occurred later, after the securities transactions were completed, when the proceeds of those transactions were allegedly funneled into unwise investments or diverted to the personal use of the Danskers. Under the securities laws, the failure of the corporation to use proceeds wisely or the theft of corporate funds by officers was hardly a reasonably foreseeable result, let alone the direct result, of any of Carro Spanbock’s alleged actions.
 
 See Mutual Shares Corp. v. Genesco, Inc.,
 
 384 F.2d 540, 546 (2d Cir.1967) (“corporate abuse and diversion” claims are not cognizable under securities laws; causal connection between any relevant acts by defendants and any damage suffered by plaintiffs “is slim indeed”);
 
 see also Marbury Management v. Kohn,
 
 629 F.2d 705, 717 (2d Cir.) (Meskill, J., dissenting) (“[T]he injury averred must proceed directly from the wrong alleged and must not be attributable to some supervening cause.”),
 
 cert. denied,
 
 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). Therefore, the section 10(b) causation requirement has not been met and the district court was correct in granting Carro Span-bock’s motion for judgment on the pleadings as to the section 10(b) claims.
 

 The Trustee also alleges that the district court incorrectly concluded that Carro Spanbock was not liable under section 10(b) as an “aider and abettor” of securities law violations. In rejecting this claim, the district court applied the “in connection with” and causation analysis that it had applied to the allegations of primary violations by Carro Spanbock.
 
 IFC III,
 
 566 F.Supp. at 201.
 

 Aiding and abetting liability has three requirements:
 

 (1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;
 

 (2) “knowledge” of this violation on the part of the aider and abettor; and
 

 (3) “substantial assistance” by the aider and abettor in the achievement of the primary violation.
 

 IIT v. Cornfeld,
 
 619 F.2d 909, 922 (2d Cir.1980).
 

 The district court properly concluded that the lack of any causal relationship between Carro Spanbock’s challenged activities and IFC’s injury also defeated the aiding and abetting claim.
 
 IFC III,
 
 566 F.Supp. at 201. In alleging the requisite “substantial assistance” by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the corporation on which the primary liability is predicated.
 
 [5]
 
 
 *63
 

 Armstrong v. McAlpin,
 
 699 F.2d 79, 92 (2d Cir.1983);
 
 Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,
 
 602 F.2d 478, 484 (2d Cir.1979),
 
 cert. denied,
 
 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).
 
 See also Rolf v. Blyth, Eastman Dillon & Co.,
 
 570 F.2d 38, 44 & n. 8 (2d Cir.) (scienter required for § 10(b) also necessary for aiding and abetting liability),
 
 cert. denied,
 
 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978);
 
 Ernst & Ernst v. Hochfelder,
 
 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Allegations of a “but for” causal relationship are insufficient.
 
 Edwards & Hanly,
 
 602 F.2d at 484.
 

 The alleged causal connection between Carro Spanbock’s actions and IFC’s subsequent damage is no more adequate to meet the aiding and abetting standard than it was to establish a primary violation by Carro Spanbock. Judge Conner correctly concluded that aider and abettor liability would not attach where the injury was not a direct or reasonably foreseeable result of the conduct.
 
 IFC III,
 
 566 F.Supp. at 201;
 
 IFC I,
 
 523 F.Supp. at 542.
 

 The only harm that could have been prevented by Carro Spanbock’s faithful exercise of its fiduciary duty would have been harm to the purchasers of the securities. But they are not parties to this action. Because the only cognizable injury is that suffered by IFC as a result of mismanagement and looting, the chain of causation is too tenuous to support liability for aiding and abetting. Thus, the section 10(b) causation requirement defeats the secondary liability claim as well.
 

 The district court was correct in concluding, as a matter of law, that any injury suffered by IFC as a result of the alleged fraud was not proximately caused by the actions of Carro Spanbock.
 
 [6]
 

 The judgment of the district court is affirmed.
 

 [1]
 

 .
 
 IFC I
 
 also addressed claims under section 20 of the Securities Exchange Act, 15 U.S.C. § 78t (1982), claims under New York's General Business Law, N.Y.Gen.Bus.Law §§ 352-c, 339-a (McKinney 1984), and a variety of common law causes of action. The court's disposition of these claims is not relevant to the questions before us.
 

 [2]
 

 . The specific claims for relief involved in this motion were the fourth (under sections 10(b) and 20 of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t (1982)), the fifth (under section 18 of the Act, 15 U.S.C. § 78r (1982)), the seventh (under N.Y.Gen.Bus.Law § 352-c), and the eighth (under N.Y.Gen.Bus.Law § 339-a).
 

 The parties addressed only section 10(b) in their briefs on appeal. The Trustee did not challenge the motion to dismiss his section 20 claim. Therefore, it was granted without objection.
 
 IFC III,
 
 566 F.Supp. at 197 n. 4.
 

 The Trustee includes no specific arguments on section 18 of the Act or on the state law claims. The parties apparently agree that their discussion of section 10(b) applies equally to section 18 and to the New York state law claims. Br. of Appellant at 11-12, Br. of Appellee at 7 n.*. Therefore, our discussion concentrates on section 10(b).
 
 See IFC I,
 
 523 F.Supp. at 544 (holding that "in connection with” and causation analyses under federal securities law claims apply equally to state securities law claims).
 

 [3]
 

 .Bloor also asserts that there are numerous, albeit unspecified, issues of fact to be resolved and that summary judgment was not appropriate. Although the briefs suggest that there is some uncertainty, the district court apparently treated the action as a motion for judgment on the pleadings.
 
 IFC III,
 
 566 F.Supp. at 201. Even if the court had treated Carro Spanbock’s motion as one for summary judgment, we would agree that any asserted factual disputes are not material.
 

 [4]
 

 . The Trustee in bankruptcy has standing to represent only the interests of the debtor corporation.
 
 Caplin v. Marine Midland Grace Trust Co.,
 
 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972). Therefore, he has no standing to assert claims of damage to the defrauded purchasers of securities.
 
 Rochelle v. Marine Midland Grace Trust Co.,
 
 535 F.2d 523, 527 (9th Cir.1976). Because section 10(b) provides a remedy only for harmed purchasers or sellers of securities,
 
 Blue Chip Stamps v. Manor Drug Stores,
 
 421 U.S. 723, 749, 95 S.Ct. 1917, 1931, 44 L.Ed.2d 539 (1975);
 
 Birnbaum v. Newport Steel Corp.,
 
 193 F.2d 461, 464 (2d Cir.),
 
 cert. denied,
 
 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), only damages sustained by IFC as a result of its sales of securities may be considered here.
 

 [5]
 

 . The district court’s later action in denying the Danskers' motion to dismiss,
 
 IFC II,
 
 Opinion and Order at 7, calls into question its holding that there was no primary violation. However, the
 
 *63
 
 absence of proximate causation is nevertheless fatal to the Trustee’s claims against Carro Span-bock.
 

 [6]
 

 . For the same reasons, the claims under the state securities laws also fail.
 
 See supra
 
 note 2.
 

 We express no opinion as to the viability of potential claims by purchasers who were harmed by the securities transactions, either under the securities laws or under the common law.