LAFER AMSTER & CO., Painewebber Incorporated, Steinhart Partners and Wertheim Schroder & Co. Incorporated, Plaintiffs,

v.

STONE CONTAINER CORPORATION, Defendant.

No. 87 Civ. 7528 (MBM).

United States District Court, S.D. New York.

Aug. 10, 1988.

---

Reavis & McGrath, Orrick Herrington & Sutcliffe, New York City, for plaintiffs.

Sidley & Austin, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Lafer Amster & Co., PaineWebber, Steinhart Partners and Wertheim Schroder & Co. are former holders of Series C Cumulative Convertible Exchangeable Preferred Shares issued by defendant Stone Container Corporation. At issue in this case is whether or not plaintiffs are entitled to payment of a quarterly cash dividend on such shares for the first quarter of 1987. Defendant Stone has moved for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., dismissing the complaint, which seeks payment of the dividend and charges securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and conversion. Plaintiffs have cross-moved for summary judgment under Rule 56, Fed.R.Civ.P., on their claim for payment of the dividend. For the reasons set forth below, both motions are denied.

### I.

As a threshold matter I must determine whether these motions should be treated as motions for judgment on the pleadings under Rule 12(c), or whether, because plaintiffs have submitted affidavits and documents outside the pleadings, they are converted by operation of Rule 12(c) into motions for summary judgment.[1] With the exception of two paragraphs in Jonathan Bigel's affidavit which essentially reiterate the facts pleaded in the conversion claim, plaintiffs' affidavits relate only to the dividend claim. Because plaintiffs have not submitted materials outside the pleadings which relate to the securities or conversion claims, I decline to convert the Rule 12(c) motions on those claims into motions for summary judgment. Accordingly, the parties' motions with respect to plaintiffs' claim for the dividend are treated herein as cross-motions for summary judgment; the remaining motions are treated as motions for judgment on the pleadings under Rule 12(c).

### II.

The events giving rise to this lawsuit can be summarized briefly as follows: On January 26, 1987 Stone declared a cumulative quarterly cash dividend in accordance with the Statement of Preferences, Rights and Limitations of the Series C Preferred

---

1. Defendant takes the position that because plaintiffs have submitted affidavits and other documents outside the pleadings, defendant's motion is converted into one for summary judg-ment. However, defendant did not submit affidavits or other documents probative on the conversion and securities fraud claims; its affidavits relate only to the dividend claim.

Shares (the "Statement of Preferences"), which defines the rights of holders of those shares. This dividend was to be paid on April 15, 1987 to all shareholders of record as of March 26, 1987. After the dividend was declared, but before the record date, plaintiffs purchased 500,300 shares which were then placed in the name of their nominee, The Depository Trust Company.

On or about March 26, 1987, pursuant to the Statement of Preferences, Stone issued a Notice of Redemption for the shares. The Notice fixed April 27, 1987 as the redemption date and stated that, as provided in the Statement of Preferences, the shareholders' right to convert their shares expired on April 13, 1987. Plaintiffs exercised in timely fashion their right to convert under the Statement of Preferences. However, they did not receive the cumulative quarterly dividend that was declared January 26, 1987. This litigation ensued.

### III.

The question of plaintiffs' entitlement to the dividend hinges on the interpretation of the following language in the Statement of Preferences:

> No payment or adjustment for accrued dividends or dividends in arrears on the Series C Preferred Shares is to be made on conversion. However, if a Series C Preferred Share (other than a Series C Preferred Share called for redemption or exchange, as the case may be, within such period) is converted between the record date with respect to any dividend payment and the next succeeding payment date, such Series C Preferred Share must be accompanied by funds equal to the dividend payable on such dividend payment date on the Series C Preferred Shares so converted.

Plaintiffs claim that the provision had no effect on their right to receive the dividend, because their right to the dividend vested as soon as the dividend was declared, regardless of whether it was to be paid at a future date and regardless of whether plaintiffs chose to convert or transfer their shares after the declaration date. They cite as proof of their claimed entitlement

provisions from the Statement of Preferences and the prospectus issued in connection with the shares stating that shareholders "will be entitled to receive, *when, as and if declared* by the Corporation's Board of Directors out of funds of the Corporation legally available therefor, cumulative cash dividends ... at the rate of $3.50 per annum per share, payable in equal quarterly installments." (emphasis added) Plaintiffs' argument appears to be that the conversion provision could not have operated to extinguish their right to the dividend because that right had already vested prior to the conversion.

Stone argues, on the other hand, that the dividend did not vest prior to the payment date, and that under the Statement of Preferences provision that "no payment or adjustment for accrued dividends or dividends in arrears on the ... shares is to be made on conversion," plaintiffs relinquished their right to the dividend when they converted their shares before the April 15 payment date. Stone further claims that the April 15 dividend necessarily was either an "accrued dividend" or a "dividend in arrears" within the meaning of the provision, and thus was extinguished on conversion. In support of this assertion, Stone cites the following provision in the Statement of Preferences which relates to the calculation of "dividends accrued or in arrears":

> The term "dividends accrued or in arrears" whenever used herein with reference to preferred shares shall be deemed to mean an amount which shall be equal to dividends thereon at the annual dividend rates per share for the respective series from the date or dates on which such dividends commence to accrue to the end of the then current quarterly dividend period for such preferred shares (or, in the case of redemption, to the date of redemption), less the amount of all dividends paid, or declared in full and sums set aside for the payment thereof, upon such preferred shares.

Stone claims that although the dividend concededly had been declared, no sums had been "set aside for the payment thereof." Accordingly, Stone concludes, the April 15

dividend was accrued or in arrears and was therefore not payable on conversion.

Plaintiffs disagree with this interpretation of the conversion provision. They argue that the language "No payment or adjustment for accrued dividends or dividends in arrears on the Series C Preferred Shares is to be made on conversion" does not apply to payment of the April 15 dividend because the dividend was not "accrued or in arrears." Rather, they urge, it was "declared in full and sums set aside for the payment thereof," regardless of whether Stone actually set aside funds, because the declaration itself created a debt to the shareholders and in effect segregated the amount payable to the shareholders from the company's assets.

As proof that no money had been set aside to pay the dividend, Stone submitted the affidavit of Michael B. Wheeler, its Vice President, Treasurer and Assistant Secretary, declaring that it is not Stone's practice to set aside any sum for the payment of dividends, and that it did not do so for the dividend payable April 15. But this assertion appears to be contradicted by that part of the Statement of Preferences definition of "dividends accrued or in arrears" which excludes "dividends ... declared in full and sums set aside for the payment thereof." That language suggests—contrary to Wheeler's representations—that Stone does have a practice of setting aside sums for the payment of dividends, so that dividends become "declared in full [with] sums set aside for the payment thereof" and thus cease being "dividends accrued or in arrears" at some point prior to the payment date. Accordingly, although I am not persuaded by plaintiffs' argument that the declaration of the dividend automatically operated to set aside the money for its payment, neither am I persuaded that the dividend under these

circumstances was necessarily a "dividend accrued or in arrears."

Stone argues further that, even if plaintiffs' right to the dividend was not cut off by operation of the first sentence of the conversion provision,[2] plaintiffs were obligated under the second sentence of the conversion provision[3] to remit to the company the amount of the dividend when they proffered their shares for conversion. Thus, Stone claims that payment of the dividend would have amounted to a wash, and that liability should not be imposed for failing to pay the dividend under those circumstances.

Plaintiffs likewise dispute this contention, arguing that they were not required to remit the amount of the dividend on conversion because the shares were "called for redemption" between the record date, March 26, and the payment date, April 15, the call having been issued on or after March 26, the record date itself. Accordingly, they claim, they come within the parenthetical phrase which excludes from the dividend remittance requirement shares "called for redemption or exchange, as the case may be, within such period." Stone disagrees with plaintiffs' reading of the language, and asserts that the phrase "called for redemption ... within such period" means that the redemption date, and not merely the call for redemption, must occur before the payment date. Because the redemption occurred on April 27 and the payment date for the dividend was April 15, Stone argues, the parenthetical exclusion does not apply.

## IV.

■ It is well established that summary judgment should not be granted in a contract action unless the terms of the contract are "wholly unambiguous." *Wards Co. v. Stamford Ridgeway Associates*, 761

---

**2.** The first sentence of the provision reads: "No payment or adjustment for accrued dividends or dividends in arrears on the Series C Preferred Shares is to be made on conversion."

**3.** The second sentence of the provision reads: "However, if a Series C Preferred Share (other than a Series C Preferred Share called for redemption or exchange, as the case may be, with-

in such period) is converted between the record date with respect to any dividend payment and the next succeeding payment date, such Series C Preferred Share must be accompanied by funds equal to the dividend payable on such dividend payment date on the Series C Preferred Shares so converted."

F.2d 117, 120 (2d Cir.1985) (citing *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). "Where contract language is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence of their intent at the time of contracting." *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983). As the Second Circuit has observed, when attempting to discover the drafter's intent it may be helpful to examine the circumstances surrounding the drafting of the provision, the drafter's identity, and the custom in the trade, among other factors. *See Wards Co., supra*, 761 F.2d 117 at 122.

Notwithstanding both sides' repeated references to the "plain language" of the conversion provision and claims that it admits of "only one logical interpretation," I find the language in question—which seems constantly to struggle for precision but never to achieve clarity—anything but "plain," and susceptible of several reasonable interpretations, including those urged by the parties. Although it is possible that there may be only one commercially reasonable meaning which can be ascribed to the provision, that meaning can be ascertained only by examining the commercial setting in which the provision was drafted and in which it was intended to operate, and the parties must be provided with the opportunity to take discovery and submit evidence—as opposed to hypothesis—on this question. Although the parties have proffered interpretations by several affiants whose knowledge and experience in the securities industry, if taken at face value, qualifies them as experts, these affidavits do not provide an adequate basis for construing the language. Accordingly, plaintiffs' motion for summary judgment must be denied.

### V.

I also must deny defendant's motion for judgment on the pleadings on plaintiffs' claims alleging securities fraud and conversion. In resolving a motion for judgment on the pleadings under Rule 12(c), Fed.R. Civ.P., "the court must accept as true all of the well pleaded facts alleged in the complaint and may not dismiss the action unless the court is convinced that ' "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' " *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985) (citations omitted). Accepting as true plaintiffs' allegations, their claims meet this standard and accordingly cannot be dismissed under Rule 12(c).

■ For their securities fraud claim, plaintiffs allege that Stone had an obligation to represent truthfully to its shareholders the material facts concerning the payment of dividends, and that it breached this obligation by failing to disclose to them that shareholders of record as of March 26, 1987 would not be entitled to the April 15 dividend if they converted their shares prior to April 15. Defendant denies any failure to disclose, and supports its claim of full disclosure with its allegation that the description in the prospectus of the shares' conversion features "tracks verbatim the relevant portions of the ... Statement of Preferences." [4] In view of the manifest ambiguity of the conversion provision in the Statement of Preferences, defendant is simply whistling past the graveyard when it insists that it "could hardly have offered any more disclosure on this subject matter" and that it was not required to "spoonfeed" information which was "already adequately disclosed." Nothing in the record leads me to conclude that the language in question is illuminated or its meaning disclosed when the language is read either in the Statement of Preferences considered with the prospectus, or in the

---

**4.** The prospectus provides as follows:
No payment or adjustment for accrued dividends or dividends in arrears on the Preferred Shares is to be made on conversion or exchange. However, if a Preferred Share (other than a Preferred Share called for redemption or exchange within such period) is converted between the record date with respect to any dividend payment and the next succeeding dividend payment date, such Preferred Share must be accompanied by funds equal to the dividend payable on such dividend payment date on the Preferred Share so converted.

prospectus alone. At this stage of the litigation, plaintiffs' securities fraud claim cannot be dismissed on the pleadings.

 Likewise, the conversion claim cannot be dismissed on the pleadings. Plaintiffs claim that their accounts at The Depository Trust Company, where the shares were held, were credited with an amount equal to the April 15 dividend, that Stone caused the credits to be removed, and that the credits were thereafter restored and removed again. Taken as true, these allegations state a claim for conversion sufficient to withstand judgment on the pleadings.

"Conversion of property is an unauthorized exercise of dominion or control over property by one who is not its owner which interferes with another person's superior possessory rights." *Cauble v. Mabon Nugent Co.*, 594 F.Supp. 985, 995 (S.D.N.Y. 1985). A claim for conversion may be maintained for a sum of money if that money is specifically identifiable. *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599 (1st Dep't 1982). However, a claim for conversion of money cannot be maintained where plaintiff never had ownership, possession or control of the money. *Id.*

Defendant argues that the conversion claim must be dismissed because, for all the reasons offered by defendant in support of its motion to dismiss the dividend claim, plaintiffs were not entitled to payment of the dividend and accordingly suffered no damages. But this argument begs the question. As discussed in Part IV above, I cannot hold as a matter of law that plaintiffs are not entitled to payment of the dividend. Accordingly, for purposes of this Rule 12(c) motion for judgment dismissing the conversion claim, I must accept as true plaintiffs' claim that they are entitled to the dividend. The viability of plaintiffs' conversion claim thus hinges on whether the dividend is a specifically identifiable sum of money, and whether the crediting of plaintiffs' accounts with the dividend gave them possession, ownership or control of the money entitling them to bring a conversion action when that credit was cancelled. On the current state of the record, I cannot hold as a matter of law that the dividend was not a specifically identifiable sum of money, or that the crediting of the dividend to plaintiffs' accounts did not give them possession, ownership or control of the dividend. These issues cannot be decided on a motion for judgment on the pleadings, but must be resolved in the commercial setting in which they arise. Accordingly, defendant's motion under Rule 12(c) to dismiss the conversion claim is denied.

For the foregoing reasons, both defendant's motion for judgment on the pleadings and plaintiffs' cross-motion for summary judgment are denied.

SO ORDERED.